419 So.2d 1227 (1982)
STATE of Louisiana
v.
James R. BLAND.
No. 81-KA-3085.
Supreme Court of Louisiana.
September 7, 1982.
*1228 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Herman L. Lawson, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Ted Brett Brunson, Lowther & Boone, Many, for defendant-appellant.
FRED C. SEXTON, Justice Ad Hoc.[*]
Defendant James R. Bland was originally charged in a four-count indictment with attempted aggravated rape, LSA-R.S. 14:27; 14:42; aggravated crime against nature, LSA-R.S. 14:89.1; indecent behavior with a juvenile, LSA-R.S. 14:81 and contributing to the delinquency of a juvenile, LSA-R.S. 14:92(A)(8). These charges were subsequently severed by the filing of three bills of information which joined the attempted aggravated rape and the aggravated crime against nature in one bill and charged indecent behavior and contributing to the delinquency of a juvenile in separate bills. Subsequent to pleas of not guilty on all charges the defendant came up for trial on May 20, 1981, on the bill of information jointly charging attempted aggravated rape and aggravated crime against nature. He was found not guilty of attempted aggravated rape but guilty of aggravated crime against nature.
Defendant's motion for new trial was denied and charges were filed under the habitual offender statute on August 6, 1981. On September 2, 1981, the trial court found Bland to be a habitual offender on the basis of a previous plea of guilty to the offense of simple burglary.
Bland was sentenced on September 15, 1981, to serve ten years at hard labor without benefit of probation, parole or suspension of sentence. He now appeals his conviction, originally asserting fifteen assignments of error, of which numbers 1, 3, 4, 12, 13 and 15 were set forth in brief. Those not argued before us are considered abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
FACTS
The state's theory of the case can be seen by the testimony of the 12 year old victim, a cousin of the defendant. She contended that during the course of a motorcycle ride with the defendant, her 34 year old cousin, a wreck occurred as a result of the way he was driving. They were thrown into a mud *1229 hole, soaking their clothes. She stated she began walking home after the accident but that her cousin caught up with her pulling down her shorts and performing oral sex upon her. She contended that she escaped from the defendant but he caught up with her and told her he would take her home on the motorcycle. However after traveling some distance he stopped and took her from the motorcycle, disrobed both himself and her, carried her to the side of the road and attempted to rape her. The record is not clear as to whether or not he actually penetrated the victim. In any case, he stopped and dressed, as she did. The defendant then took her to an abandoned house where he again disrobed her against resistance, once again performing oral sex and again attempting rape, which went on "all night." She concluded by testifying that after both parties dressed in the morning they got on the motorcycle to return home. However the bike ran out of gas and they walked to a friend's home.
The defendant, on the other hand, admitted giving the ride to his cousin and the fact of the accident. However he stated that the cause of the accident was her "goosing" him and putting her hands over his eyes while he was driving. He stated that while he was attempting to restart the bike she removed her shirt, wringing water out of it. She apparently then began walking off. He restarted the bike and picked her up some two miles down the road. He stated that this process of restarting took an hour and one-half to two hours during which time he did not see the victim. He denied performing oral sex on the victim and stated that when he caught up with her he advised her they needed to get some gas at a nearby house in order to get home. He contended he did not know that the house was abandoned. He suggested they return but she did not want to until daylight because of the need to walk back. He specifically denied ever attempting to have sex with her or that he threatened her in any fashion. He did state that when he woke up he removed his clothes in order to shake off the dried mud. He also said they rode the motorcycle until it ran out of gas, walking the rest of the way.
ASSIGNMENT OF ERROR NO. 1
By this assignment Bland contends that the trial court erred in denying his motion to quash the jury venire because the panel was prejudiced by viewing a film or videotape entitled "Jury Duty". It is defendant's position that the film was "pro-prosecution propaganda."
Defendant, in timely fashion, raised a motion to quash the jury venire on the grounds that it was improperly drawn, selected, and constituted in that it had viewed the offending film.[1] LSA-C.Cr.P. Art. 532(9). The trial court found that the film was not, when viewed in its entirety, prejudicial per se to the function of the jury. Nor did it find the film to be inaccurate or misleading. The trial court additionally noted the right of defense counsel to question jurors on voir dire as to the effect of the film on their role at trial.
Our jurisprudence does not readily provide guidance on this issue. Certainly defense counsel could have excluded those members of the potential jury on voir dire who impartiality may have been influenced by the film. See generally, State v. Charles, 350 So.2d 595, 597, (La.1977).
The knowledge of criminal law and procedure that a lay person brings with him when called for jury duty is the amalgamative result of exposure to sources of information as diverse as high school civics classes, fictional television programming, and perhaps their own interaction with the judicial system. To quash the entire venire on the basis of exposure to one more source of information, albeit one with the official blessing of the trial court, would seem a meaningless gesture particularly when the voir dire process remains available.
*1230 Barring a showing of actual bias or impartiality (which does not seem to be the case here given the not guilty verdict on one charge) the defendant's motion was properly denied and the trial court did not abuse its discretion.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
By this assignment Bland asserts that the trial court erred in refusing to sever the two joined counts for trial. In his motion to quash defendant argued that trial on more than one count of the indictment would substantially prejudice his right to a fair trial.[2] Bland asserts, in his brief, that while both counts involve sexual offenses the evidence necessary to prove the crimes is different. Under this theory defendant contends that the jury may have been confused and assumed that the oral sex act must have occurred since there were no signs of actual intercourse.[3]
Bland further contends that the trial court should have severed the counts because they were not mutually admissible as legitimate "other crimes" evidence under State v. Prieur, 277 So.2d 126 (La.1973) or as similar acts within the contemplation of LSA-R.S. 15:445 and 14:446. Bland claims that the counts should have been tried separately since the proof of each count does not relate to the other. It is his assertion that since the only proof of the crimes presented by the state was the testimony of the victim it would only be logical for the jury to have disbelieved the victim's entire testimony rather than only her testimony concerning the rape.[4]
Finally defendant asserts that the trial court erred in failing to sever the counts pursuant to LSA-C.Cr.P. Art. 495.1[5] and that he was thereby denied a fair trial in that the testimony as to the attempted rape would not have been admissible to bolster the case as to the act of oral sex.
At the outset it should be noted that two or more offenses may be charged in the same indictment under LSA-C.Cr.P. Art. 493 if the offenses charged:
"... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
The facts of the instant case indicate that the crimes charged were part of a continuous criminal transaction which would render evidence of each crime admissible at trial of the other as part of res gestae. LSA-R.S. 15:447[6]; State v. Webb, 364 So.2d 984 (La.1978). In the instant case, the offenses complete meeting the test set forth in the above article as the punishment for each offense is necessarily confinement *1231 at hard labor and the mode of trial (jury composed of twelve jurors, ten of whom must concur to render a verdict) is the same. LSA-C.Cr.P. Art. 782. Hence, the offenses were properly joined in the same indictment. LSA-C.Cr.P. Art. 493.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4
By this assignment defendant contends that LSA-R.S. 14:89.1 is constitutionally vague and overbroad and that its application violates due process in that the statute does not adequately inform the public of the behavior prohibited.
The jurisprudence of this state has rejected this proposition where the state's theory of the case is that the act was not consensual or between married couples, as here between this 34 year old defendant and 12 year old girl. State v. Lindsey, 310 So.2d 89 (La.1975); State v. Langendorfer, 389 So.2d 1271 (La.1980).
Accordingly, this assignment of error lacks merit.
ASSIGNMENTS OF ERROR NOS. 12 AND 13
By these assignments Bland contends the trial court erred in denying his motion for new trial because there was insufficient evidence to support his conviction and because the state failed to prove his guilt beyond a reasonable doubt. Bland claims that the testimony of the victim was not credible or sufficient to prove his guilt and that crime was uncorroborated beyond her testimony. He further contends that he was prejudiced by the fact that the examining physician could not conduct the proper tests to determine if oral sex had taken place.[7]
The victim testified that Bland committed oral sex upon her twice during the incident that night. It is not clear which act was the basis for defendant's conviction. Defendant's brief only addresses the initial act.
Defendant denies the victim's accusations and asserts that her testimony is not credible, and that the physical act, as described, would have been "difficult" given the positions of the parties.
The standard used in reviewing the sufficiency of evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Campuzano, 404 So.2d 1217 (La.1981).
Considering the victim's testimony, the circumstances of the victim's departure and return as testified to by other witnesses, the respective ages of the defendant and the victim, as well as his version of the events (including the points of mutual agreement in his version and that of the victim) a rational trier of fact could have easily reached the result here rendered.
These assignments of error lack merit.
ASSIGNMENT OF ERROR NO. 15
By this assignment Bland contends that the trial court erred in enhancing his sentence as a habitual offender because the state failed to prove that his plea of guilty to a 1975 simple burglary charge had been given after a proper waiver of his full Boykin rights. At defendant's habitual offender hearing the state introduced, over defendant's objection, the minute entry corresponding to Bland's earlier guilty plea hearing.[8] These minutes clearly reflect a full *1232 Boykin inquiry and the assistance of counsel.
The defendant did not contend in the trial court that the minute entry was in error. There and now, he contends that such a minute entry is insufficient proof in the face of a defense objection. He contends that when defendant objects the state must introduce a transcript of the plea of guilty to sustain its burden, citing State v. Martin, 379 So.2d 1092 (La.1980) and State v. Williams, 384 So.2d 779 (La.1980). The defendant takes this position in spite of the fact that he made no contention, even perfunctorily either in the trial court or in this court, that the minutes in question were in error.
The position of the defendant is in error. In order to enhance a penalty under the multiple offender statute, the jurisprudence is that the state may affirmatively prove that the defendant had the benefit of counsel and that he was fully Boykinized by either the transcript of the plea of guilty or by the minute entry. State v. Lewis, 367 So.2d 1155 (La.1979).
The rule prior to Lewis was that the state did not have to affirmatively prove that the judge himself had made the defendant aware of his Boykin rights. That proof could be obtained through an evidentiary hearing showing that the defendant was otherwise aware of these rights. State ex rel Jackson v. Henderson, 255 So.2d 85 (La. 1971). But in Lewis, Chief Justice Dixon, speaking for the court, stated:
"In a multiple offender hearing, only those previous pleas of guilty may be used to enhance a sentence which are supported by a contemporaneous record of a Boykin examination demonstrating the free and voluntary nature of a plea of guilty with an articulated waiver of the constitutional rights required by Boykin v. Alabama." Lewis, supra, at p. 1160. (Emphasis added).
The court through Justice Tate in State v. Holden, 375 So.2d 1372 (La.1979), in discussing whether Lewis applied to non-Louisiana convictions, noted that the "contemporaneous record" of Lewis meant either the minutes or a transcript:
"The issue as thus posed is an aftermath of our decision in State v. Lewis, 367 So.2d 1155 (La.1979). There, we held that a 1970 guilty plea in a Louisiana court could not be used `over objection' to enhance punishment as a multiple offender unless the minutes or transcript of the plea of guilty affirmatively disclosed..." State v. Holden, supra, at p. 1373. (Emphasis added).
In State v. Martin, supra, relied on by the defense, this court disallowed the use of a 1974 conviction because the "guilty plea record" showed only that the defendant waived his right to a trial but did not affirmatively disclose the waiver of the other Boykin rights. It is not clear from the opinion whether the trial record referred to was the minutes or the transcript of the guilty plea. Whichever, it is apparent that the state did not "produce a contemporaneous record of the defendant's guilty plea affirmatively showing a waiver of his right to jury trial, his right to confront his accusers, and his privilege against compulsory self-incrimination." Martin, supra, at p. 1094.
*1233 In State v. Williams, supra, the other authority of the defendant, the defendant's guilty plea was overturned on appeal because at the plea "the judge did not affirmatively and independently establish that Williams made a knowing and voluntary waiver of his constitutional rights." Williams, supra, at p. 780. The transcript itself of the plea was introduced. It showed only that the defendant waived his right to trial, but no mention was found therein of either the right to face his accusers or his right against compulsory self-incrimination.
In this case, recall that the defendant did not contend that the minutes were in error. He simply asserted that they were an insufficient record. But the state did show through a contemporaneous record that in the conviction relied upon the defendant was represented by counsel and affirmatively waived his Boykin rights. We find nothing in the jurisprudence which would preclude the state from making prima facie case through the official court minutes as to counsel, voluntariness and knowing waiver of Boykin rights with respect to a previous conviction used for enhancement. Lewis-Holden, and their progeny, do not provide an exclusive method of establishing the voluntary and knowing standards of a previous conviction particularly where the defendant does not assert any error in that record. Under these circumstances the state complied with its burden by the introduction of the minute entry.[9]
This assignment of error lacks merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NORRIS, J., dissents with reasons.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents for reasons assigned by NORRIS, J.
SEXTON, Justice Ad Hoc, assigning additional concurring reasons.
With respect to assignment of error number fifteen, the confusion over the state's prima facie burden of proof in a multiple offender hearing is understandable. As we noted in the main opinion, State v. Lewis, supra, established the principle that the plea had to be supported by a contemporaneous record. (In Lewis the minutes were found deficient). State v. Holden, supra, explained that such a record meant either the minutes or the transcript.
The issue was perhaps first confused shortly over a month later in the per curiam opinion of State v. Bolton, 379 So.2d 722 (La.1979), when the Court stated:
"... in order to use the prior plea of guilty to enhance punishment in a subsequent proceeding, the state must, if objection is made to its voluntariness or to its being a knowing plea (due, e.g., to the absence of waiver of the Boykin rights), affirmatively show through (only) a contemporaneously recorded transcript that the plea was voluntary and made with an awareness of its consequences. State v. Lewis, 367 So.2d 1155 (La.1979); State ex rel. LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557 (1972); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971)."

State v. Bolton, supra, 379 So.2d at p. 723. (Emphasis added).
Bolton does say that only a recorded transcript can sustain the state's burden. Such is the case per Bolton only if the conviction is objected to as not being voluntary or made in the absence of a waiver of Boykin rights. Thus Bolton is saying there must be a specific objection. Recall that in the case at bar the defense did not object that the plea was involuntary or that the minutes were in error as to the Boykin waiver contained therein.
A reading of Bolton makes it obvious that the case is not attempting to change the Lewis-Holden rule and place a higher burden on the state than was previously necessary. Bolton is less than five weeks after Holden and is a per curiam opinion. At *1234 issue was a 1966 Louisiana conviction, the burden of proving which was rendered less difficult to the state by Lewis.
State v. Nelson, 379 So.2d 1072 (La.1980), rendered just six weeks after Bolton made it even more obvious that Bolton did not increase the state's Lewis-Holden burden. In Nelson the defendant's only designation of error was a request for review "for any discoverable error." Apparently there was still strong controversy among the court with respect to the Holden majority's interpretation of the United States v. Timmreck, 441 U.S. 780, 99 S.Ct. 2085, 6 L.Ed.2d 634 (1979),[1] an issue not pertinent to the defense assignment here.
While the opinion is not definite on the matter, it appears that in Nelson the defense did not object to the predicate of the state's proof at all. This proof did not contain the minutes or the transcript of the guilty plea. Justice Dennis, as author, stated that if there is no objection the state must only prove that the defendant was represented. But, if there is objection that the plea was not voluntary or made with a knowing waiver of Boykin rights, then the state had the burden of coming forward with a contemporaneous record:
"Thus with respect to a conviction based on a guilty plea in a Louisiana court subsequent to December 8, 1971, if the defendant objects to the predicate for the state's evidence that the guilty plea was knowing and voluntary, the state has the burden of showing affirmatively a contemporaneous record that, at the time of the plea, the accused was informed of and made a knowing waiver of his privileges against self-incrimination, his right to a jury trial, and his right of confrontation. If the defendant does not object on this ground, the state, in order to establish the knowing and voluntary guilty plea, is required only to prove that the prior conviction resulted from the defendant's guilty plea at which he was represented by counsel. State v. Holden, supra, 375 So.2d at 1376." State v. Nelson, supra, at p. 1074. (Emphasis added).
State v. Martin, supra, cited by the defense in this case was handed down the same day as Nelson. As we have previously noted it is not clear from the opinion whether the proof of the plea under attack was attempted by the minutes or a transcript. Nevertheless, the evidence was clearly deficient.
The next case we are aware of in this line is State v. Williams, supra, some five months after Nelson and Martin, and also cited by the defense here. The issue in Williams was not the quality of the plea used to enhance, but was an appeal on that plea itself. In evaluating the plea in question the court discussed standards used to judge the validity of pleas both for multiple offender hearings and for second offender convictions. With respect to multiple offender hearings the court stated:
"... we require that the state produce a contemporaneous record of defendant's guilty plea colloquy with the trial judge which affirmatively shows the waiver of his right(s) ... State v. Martin, 379 So.2d 1092 (La.1980)." State v. Williams, supra, at p. 781.
The court did seem to state that "contemporaneous record" means a transcript. But I suggest that the court was simply reviewing in very general terms the previous jurisprudence with respect to guilty pleas. Note that Martin is cited as authority for the proposition, but we must remember that in Martin it was not clear whether the state attempted to prove the previous conviction by either the transcript of the colloquy or the minutes (but in either case, it was obviously deficient). Furthermore Martin cited Holden wherein the court specifically stated that either the minutes or the transcript was sufficient.
Thus it is Bolton and Williams which seem to allow proof by only a transcript. But Bolton is a per curiam opinion and the statements in both are dicta. More importantly, the discussions in each case were *1235 obviously very general summaries of the law in a related area.
Also confusing is that arguably Nelson is a retreat from Lewis in that it seems to require the state only to prove counsel unless there is an objection. Also note that Bolton is pre-Nelson and within five weeks of Holden (which, recall, simply explained Lewis). Then there is Williams which seems to say the same thing as Bolton, but Nelson and Williams have the same author.
The very recent case of State v. Age, 417 So.2d 1183, (1982), rendered by a three-man majority, with the author assigning additional concurring reasons, a fourth Justice concurring in the result and three Justices dissenting, may on its face also seem to sustain the defense position here. I submit not on analysis, however. In State v. Age the state attempted to prove the conviction used to enhance by introducing a minute entry and a rights waiver form. However the minute entry only stated that the court "interrogated the defendant as to whether he understood his constitutional rights, the court explained the same and the defendant answered in the affirmative." The minute entry was obviously far short of establishing knowing Boykin waivers. Likewise the majority found that the rights waiver form was insufficient because, while it informed the defendant of his right to trial, it did not inform him of his right to trial by jury. The opinion further found fault with the explanation of the other Boykin rights in the waiver form. Thus Age simply holds that the proof submitted in that case was insufficient.
Concededly the author of Age goes on to explain that in all instances the state's prima facie case should be supported by the transcript of the guilty plea colloquy rather than a waiver form. Apparently there was disagreement on that issue as reflected by the nature of the vote.
While I would agree with Justice Marcus in his dissent in Age that the rights form is sufficiently curative, I believe that it is marginally so. However, I cannot equate the use of a rights waiver form with the use of official court minutes. Surely those minutes should be binding and considered valid unless the defense can show some reason why they are not. The introduction of an official minute entry showing representation of counsel and a complete Boykin waiver should then shift the burden to the defense to show that the minutes are in error. Obviously if the transcript of the colloquy of the plea is at variance with the minutes the transcript should prevail. But I would hold that once the state establishes a prima facie case by virtue of the court minutes (or a waiver form) that the burden then shifts to the defendant. I believe there is no jurisprudence to the contrary. If so, it should be overruled.
Said simply, the uncontradicted official court minutes are a sufficient contemporaneous record to establish a prima facie case for the validity of a previous plea where those minutes show counsel, voluntariness and knowing waivers per Boykin.
NORRIS, Justice Ad Hoc (dissenting).
I respectfully dissent as to Assignment of Error No. 15. I would conclude that a minute entry is insufficient proof in the face of a defense objection and would require the state to produce a transcript of the hearing of the entering of the guilty plea in order that a determination be made as to whether or not a defendant knowingly and intelligently waived his Boykin rights. In my opinion, a minute entry does not constitute a contemporaneous record which adequately and affirmatively shows a knowing and voluntary waiver of constitutional rights. I would follow State v. Williams, 384 So.2d 779 (La.1980) wherein this Court stated:
In cases where a prior conviction based on a guilty plea is being used to enhance the penalty under our multiple offender laws, we have required a strong showing of a knowing and voluntary waiver of rights by the defendant when his guilty plea is accepted by the trial judge. In such instances, we require that the state produce a contemporaneous record of the defendant's guilty plea colloquy with the trial judge which affirmatively shows the *1236 waiver of his right to jury trial, his right to confront accusers, and his privilege against compulsory self-incrimination. State v. Martin, 379 So.2d 1092 (La.1980). [Emphasis added.]
See also Justice Calogero's concurring opinion in State v. Age, 417 So.2d 1183 (La. 1982).
CALOGERO, Justice, dissenting.
The majority relies on State v. Lewis, 367 So.2d 1155 (La.1979) and State v. Holden, 375 So.2d 1372 (La.1979) to support its holding that the state met its burden of proving that defendant was properly Boykinized before entering his 1975 guilty plea by merely introducing the minute entry of the plea.
While there may be some merit to the argument that those cases implied that Boykinization of a defendant before his guilty plea is taken could be proven by the court minutes, there are several later cases which have clearly held that proof by the minutes is insufficient, thus changing the expressions of Lewis and Holden. State v. Cusher, 400 So.2d 601 (La.1981); State v. Williams, 384 So.2d 779 (La.1980); State v. Bolton, 379 So.2d 722 (La.1979).
State v. Bolton, supra, a Per Curiam opinion subscribed to by the whole Court, was written only a month after Holden in an attempt to clarify the procedure to be utilized when a prior guilty plea conviction is being used to enhance punishment or as a predicate offense for a subsequent felony conviction. Therein, the Court most clearly held:
... for pleas of guilty taken after December 8, 1971, on order to use the prior plea of guilty to enhance punishment in a subsequent proceeding, the state must, if objection is made to its voluntariness or to its being a knowing plea (due, e.g., to the absence of waiver of the Boykin rights), affirmatively show through (only) a contemporaneously recorded transcript that the plea was voluntary and made with an awareness of its consequences.

In State v. Williams, supra, the Court again expressed the view that the state could only meet its burden of proving that a guilty plea was voluntarily entered with an understanding of the consequences by producing the contemporaneously recorded transcript of the colloquy between the trial judge and the defendant. The Court stated:
In such instances [multiple offender proceedings] we require that the state produce a contemporaneous record of the defendant's guilty plea colloquy with the trial judge which affirmatively shows the waiver of his right to jury trial, his right to confront his accusers, and his privilege against compulsory self-incrimination.
* * * * * *
In instances when the prior conviction is based on a guilty plea we have held that the waiver by defendant of his rights, ... must be shown to have been made knowingly and voluntarily through a contemporaneously recorded transcript of the colloquy between the defendant and the judge regarding the waiver of these rights.
Most recently, in State v. Cusher, supra, 602, n. 2, the Court addressed the question of proof of the validity of a guilty plea upon a direct attack and observed:
Where, as in State v. Williams, [supra] a plea is relatively recent, the colloquy with the trial judge must affirmatively establish a waiver of the three constitutional Boykin rights.
Thus, whatever may have been the initial expressions of the Court concerning the mode of proving the voluntariness of a guilty plea in Lewis and Holden, the Court has since clearly held that the contemporaneously recorded transcript of the colloquy between the trial judge and the defendant is essential.
Furthermore, it has been the practice of this Court to scrutinize more closely the guilty plea proceedings to insure that the defendant was properly and adequately advised of his rights. Close scrutiny, or for that matter any review, of the adequacy of the advisement of rights is impossible from *1237 just a minute entry summarizing the proceedings.[1]
The more recent decisions of this Court have indicated that there is a serious question as to whether or not a waiver of rights form can suffice as proof of an adequate Boykinization (See my concurring opinion in State v. Age, 417 So.2d 1183 (La.1982), On Rehearing). In view of the uncertainty over that issue, where at least the Court is able to review exactly what information was provided the defendant about his rights, it seems clear to me that a minute entry by a court reporter of what transpired in court is clearly not sufficient.
Therefore, because of the imprecision of a minute entry, the impossibility of a review of the proceedings from a minute entry, and especially the prior jurisprudence of this Court requiring production of a transcript of the colloquy between the trial judge and the defendant to prove the validity of a guilty plea, I do not think that the state meets its burden of proving the validity of a guilty plea by simply the use of the minute entry of the plea. For these reasons I dissent.
NOTES
[*] Judges Fred C. Sexton, Jr., and William Norris, III, of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack C. Watson, and Harry T. Lemmon.
[1] The film was made available to the trial court by the Louisiana Judicial Administrator's Office.
[2] The charges were apparently combined as being offenses arising out of the same transaction. LSA-C.Cr.P. Art. 493.
[3] The coroner, after examining the victim, found the victim's hymen to be intact and no evidence of abrasions, scrapes or bruises that were attributable to the attempted rape. There was no evidence beyond the victim's testimony to corroborate the assertion that Bland committed oral sex upon the victim.
[4] This assertion overlooks the subsequent coroner's finding that the victim's hymen was intact. While it is unclear from the testimony whether defendant actually penetrated the victim it would seem logical that the jury could have found neither rape nor attempted rape upon the evidence presented.
[5] LSA-C.Cr.P. Art. 495.1. Severance of offenses

If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
Added by Acts 1975, No. 528, § 3. Amended by Acts 1978, No. 466, § 1.
[6] LSA-R.S. 15:447. Res gestae defined; admissibility

Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
[7] The victim had bathed before being examined thus denying the examining physician the opportunity to obtain results from tests which would have determined the presence of sperm, foreign pubic hair, or saliva.
[8] The text of the minutes states:
 Many, Louisiana
 January 17th, 1975

The Honorable Eleventh Judicial District Court, Parish of Sabine, Louisiana, met this day pursuant to adjournment, His Honor Jack E. Burgess, Judge, presiding and all other officers present, whereupon the following proceedings were had and ordered entered.
State of Louisiana :
Vs. #21,996 : Charge: Simple Burglary.
James Bland :
The defendant was present in open Court with Court appointed attorney Mr. Thomas Joe Cassell. The defendant was formally arraigned, personally and through counsel Plead Guilty. Before accepting the plea of guilty to Simple Burglary the Court inquired of the defendant if he understood that by entering this plea he as waiving his right to trial by jury, waiving his rights against compulsory self-incrimination and waiving the right to be confronted by the witnesses against him. The defendant replied affirmatively. The District Attorney made a statement of the facts and the defendant confirmed their correctness. The Court then inquired of the defendant if he was aware of the nature of the charge to which he was pleading and the maximum possible penalty therefor and whether the plea of guilty to Simple Burglary was freely and voluntarily made. The defendant again replied affirmatively. Whereupon, the Court accepted the plea of guilty to Simple Burglary and ordered the plea of guilty to Simple Burglary recorded in the minutes of the Court. The Court ordered a presentence investigation to be made before sentencing.
[9] See additional concurring reasons by the author.
[1] Justice Dennis, the author of Nelson, explained his view of the Timmreck-Holden relationship in a special concurrence with five other Justices also concurring.
[1] A minute entry is nothing more than a synopsis of the in-court proceedings and can at times be imprecise and thus unreliable as proof of exactly what was told the defendant by the judge. In the present case, for example, the minute entry provides that the defendant was informed of "the right to be confronted by the witnesses against him" rather than the right to confront the witnesses against him. This may well have simply been an inexact recitation of what the judge advised, but it is because of such imprecision that a minute entry does not sufficiently prove what the defendant was told in court by the judge concerning his constitutional rights.