471 So.2d 945 (1985)
STATE of Louisiana, Appellee,
v.
Dean R. BAKER, Appellant.
No. 17082-KW.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
Wm. Rick Warren, Indigent Defender Office, Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., *946 Bossier City, L. Charles Minifield, Asst. Dist. Atty., Minden, for appellee.
Before MARVIN, FRED W. JONES, Jr., and LINDSAY, J.J.
MARVIN, Judge.
In this conviction of DWI 2d offense we granted a writ to review whether the evidence was sufficient to convict and whether the State proved that defendant had been convicted of DWI 1st offense. We find defendant's assignments are without merit and affirm the conviction.
The standard of review of the sufficiency of the evidence for a criminal conviction based on circumstantial evidence is whether the evidence, when viewed in the light most favorable to the prosecution, will support the conclusion of a rational finder of fact that every reasonable hypothesis of innocence has been excluded beyond a reasonable doubt. State v. Sims, 426 So.2d 148 (La.1983); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984).
An appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror [trier of fact] to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.

State v. Captville, supra, at p. 678. Footnote omitted. Emphasis by the supreme court.

FACTS
The record establishes that at about 11:55 p.m. on June 8, 1984, defendant's vehicle was struck by another vehicle at an intersection in Minden. Three Minden police officers who came to the scene testified about defendant's intoxication.
Officer Yetman testified that when he arrived at the scene the defendant was seated behind the wheel of his vehicle but later got out of the vehicle. He said that the defendant smelled strongly of alcohol, had red eyes, slurred speech, refused medical treatment, and admitted that he had had four or five beers that night. Defendant was transported to police headquarters where sobriety tests were administered. Officer Yetman testified that the defendant was "uncooperative" during tests; that defendant complained that his neck hurt and said he could not put his head back, close his eyes, or attempt to touch his nose with his index finger; and that defendant refused the PEI test. The officer concluded the defendant was intoxicated.
Officer Booth testified that when he arrived at the scene defendant was conscious and smelled of alcohol, had red eyes, and was unsteady and swaying on his feet. Booth observed defendant taking the sobriety tests. He also concluded that defendant was intoxicated and did not appear to be suffering from a physical ailment.
Officer Webb testified that he saw the defendant seated behind the wheel but slumped over toward the passenger seat. Webb said that he instructed defendant to remain in that position until medical personnel arrived. The defendant got out of the car without assistance after the medical personnel arrived but refused medical treatment. Webb said that the defendant smelled of alcohol, and that his eyes were watery, dilated, and red. Webb said that the defendant did not appear to be in any pain but said his neck was hurting.
The defense offered a certified copy of defendant's medical records from LSU Medical Center. These records show that at 6:17 a.m. June 9, about six hours after the accident, the defendant's blood alcohol level was 40 mg. or .04 grams percent. The defendant contends his hospital blood test shows he was not intoxicated when the collision occurred.
Defendant, his two friends who were passengers in his vehicle when the collision occurred, and defendant's wife also testified. *947 All admitted that defendant had been drinking beer before the collision but asserted he was not "intoxicated."
Defendant was hospitalized several days at LSU Medical Center with a head laceration and a "hangman's fracture" of his neck.
The defendant said that he was knocked unconscious by the collision and did not remember anything about the night of the accident until he was placed in a Minden jail cell. Defendant also testified that he had an open beer in his lap when the collision occurred.
Defendant urges that he rebutted the officers' testimony and their inferences that he was intoxicated, arguing that his injury and spilled beer in his lap explains the officers' conclusions.
Defendant's wife, who had a degree in medical technology from Creighton University, was accepted as an expert regarding dissipation of alcohol in blood. She testified that for seven hours the blood alcohol level will dissipate only 15-20 percent remaining relatively stable. She based this statement on what she says she has read in medical literature and what she was taught in school.
Defendant admits that he had one beer or a portion thereof between 6:45 and 9:45 at a bowling alley, another beer sometime between 9:45 and 11:25 at the home of one of his passengers, and that he was drinking a beer in the car just before the accident.
Passenger Beckha testified that the defendant picked him up around 10:00 p.m. and that they drank a beer at Billy Wright's house at about 11:00 p.m. Beckha testified that the three were drinking their second beer when the accident occurred.
Passenger Wright said that the three purchased ice and a six pack of cold beer after 11:00 p.m.; that they drank one beer on the way to Wright's home, and another beer between his home and the Minden exit on I-20, where Wright got out of the vehicle and removed a six pack of beer from the trunk. He said they opened and began to drink their third beer from the six pack only shortly before the accident occurred.
Thus the testimony of Wright shows that defendant drank two beers and part of a third in the one hour before the 11:55 p.m. accident. The trial judge obviously did not believe the testimony of passenger Beckha. The court also said that defendant could have been as much as .10 grams percent when the accident occurred.[1]
We find the evidence legally sufficient to support the trial judge's conclusion that the State proved defendant's intoxication beyond a reasonable doubt.

THE PREDICATE DWI 1ST
The defendant complains that the State failed to prove beyond a reasonable *948 doubt that he is the identical defendant in a 1982 conviction for DWI 1st offense in the 26th Judicial District Court. We must disagree. The exhibits introduced by the State by themselves would not prove beyond a reasonable doubt that the Dean R. Baker convicted of DWI in Bossier Parish in 1982 is this defendant, but the defendant's medical records in this record show that he has the same social security number, physical characteristics, and date of birth as the Dean R. Baker convicted in Bossier in 1982. This evidence is sufficient to prove beyond a reasonable doubt that defendant was convicted for DWI in Bossier in 1982.
The defendant also complains that the evidence of his first conviction cannot be used for an enhanced conviction here because the record of the prior conviction does not show a valid waiver of his constitutional rights. The State is required to present a record (made contemporaneously with a court's acceptance of the defendant's plea) that shows that the defendant, in the first conviction, effectively waived those constitutional rights required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Bland, 419 So.2d 1227 (La.1982). The rights which must be knowingly and expressly waived are the right against self-incrimination, the right of confrontation, the right to trial, and the right to counsel.
The State's evidence of the 1982 DWI consisted of a minute entry, a constitutional rights waiver form, and a guilty plea form. A guilty plea, rights waiver form executed in open court by a defendant and complete in every detail, without minutes or a transcript of the colloquy between the judge and defendant, is not sufficient to show the knowing and voluntary waiver of the Boykin rights. State v. Bland, supra; State v. Bolton, 379 So.2d 722 (La.1979); State v. Holden, 375 So.2d 1372 (La.1979). See also State v. Blunt, 464 So.2d 869 (La.App.4th Cir.1985) and State v. Lewis, 367 So.2d 1155 (La.1979).
The minutes relating to defendant's first conviction recite:
The defendant appeared in open Court and the Court, after a colloquy with the defendant, wherein the Court advised the defendant of his right to counsel, and concluding that the defendant had made a knowing and intelligent waiver of his legal rights, specifically including the right to counsel, and the defendant having signed a written waiver of said rights, was arraigned and entered a plea of guilty. The Court accepted this plea and sentenced him to pay a fine of $275.00 and costs or serve 60 days in jail.
The waiver of constitutional rights and plea of guilty form executed by defendant states:
I understand that in pleading guilty to such charge I stand convicted thereof and waive the following constitutional rights:
1. To be tried by a judge of this Honorable Court.
2. To confront and cross-examine the witnesses who accused me of the crime charged.
3. To compulsory process of the court to require witnesses to appear and testify for me.
4. The privilege against self-incrimination or having to take the stand myself and testify.
5. To be represented at all times in the proceeding, including appeal, by counsel of my choice or by a court-appointed attorney at no cost to me if I lack finances to employ one.
I acknowledge that I am guilty of the offense charged and do voluntarily waive such rights and enter a plea of guilty thereto. I have not been induced to plead guilty or sign this statement by any threat, pressure or force, my actions being entirely free and voluntary, I also understand that I may invoke the supervisory jurisdiction of the Louisiana Supreme Court to review this plea of guilty.
The Judge has addressed me personally as to my waiver of an attorney and understanding of this statement and has *949 given me the opportunity to make any statement I desire.
This done and signed in open Court on Nov. 3, 1982.
The court minutes referring to the colloquy between the court and the defendant and to the waiver form being signed in open court by the defendant which asserts that the court has personally addressed defendant about his understanding of the statement, when considered together, are contemporaneous records sufficient to satisfy Boykin, Bland and the Louisiana Supreme Court cases cited above.
At the trial of a DWI 2d offense, the State must prove that the defendant has been convicted of DWI 1st under Boykin standards as an element of the charge. LRS 14:98; 15:271. Compare the Habitual Offender Law, LRS 15:529.1, and State v. Blunt, supra. The guilty plea and constitutional rights waiver with minutes which we have quoted in part, are sufficient to prove the predicate DWI first offense under Boykin standards.
The conviction is AFFIRMED.
NOTES
[1] The court noted that even accepting defendant's wife's expert testimony as to the rate at which alcohol dissipates defendant would have been in the .05-.1 grams percent range of blood alcohol at the time of the accident and therefore not entitled to the presumption of non-intoxication of LRS 32:662. The court noted:

... [I]t would appear ... that at the time of the accident intoxication would probably be somewhere between .05 and .1 ... which means you take that, together with all the other evidence and then have to decide whether or not there is intoxication.
Medical treatises available to us show that the human body metabolizes alcohol at the hourly rate of .015 percent. This rate is essentially independent of body weight, nutritional state, activity, or the kind of beverage consumed. See Gray's Attorney's Textbook of Medicine 3d Ed. 1934, 1985 Sec. 133.30 et seq. Thus, the defendant's blood alcohol concentration as of the time of the accident can be calculated from the test run at 6:17 a.m. at LSU Medical Center using the formula: observed percent alcohol in blood plus (.015 × hours) = percent alcohol in blood at the time of the accident. Approximately 6.25 hours passed between the time the accident occurred and the time the blood test was performed. Because it takes the body 60-90 minutes to complete absorption of ingested alcohol and because the defendant was by his own admission drinking up till the accident occurred, we subtract 1½ hours from the 6.25 interim between the accident and the blood test, leaving 4¾ hours. 4.75 × .015 = .07125 percent which, added to .04 equals .11125 percent blood alcohol. This generally supports the trial judge's conclusion that defendant was in the .05-.1 gram percent range.