1BYRNES, Chief Judge.
STATEMENT OF CASE
Brian Baudier and Andrew Krantz were charged by bill of information on February 16,1996, with armed robbery, a violation of La. R.S. 14:64. Baudier[1] pled not guilty at his arraignment on February 23, 1996. The jury convicted him of first degree robbery on May 14,1998. On July 9,1998, the State filed a multiple bill of information. On April 15, 1999, the court adjudged the defendant a second offender, and sentenced him to serve forty years, without benefit of parole, probation or suspension of sentence.

STATEMENT OF FACT

On December 12, 1995, Dan Ryan visited the city on business. At about 7:30 p.m. that night, as Ryan walked in the French Quarter, he passed two men standing on Chartres Street. Ryan continued walking on Chartres Street toward Canal Street, and as he walked, he heard the men whispering, and following him. Concerned for his safety, Ryan crossed the street. The two men followed. Shortly thereafter, one of the men, holding a knife, grabbed Ryan’s shoulder, while the other suspect ordered him to place his money on the ground. Ryan complied, ^throwing money and a Marriott Hotel card to the ground. The assailants retrieved the items, and fled. Ryan proceeded to the *700 police station on Royal Street, reported the incident, and supplied a description of the suspects. Later that night, Ryan received a telephone call from a St. Bernard Parish deputy, asking if he had lost his Marriott Hotel card. The next day, Ryan identified the defendant as the knife-wielding assailant from an NOPD photographic lineup. At trial, Ryan unequivocally testified that the defendant was the man who threatened him with a knife.
At approximately 10:00 p.m. on December 12, 1995, St. Bernard Parish Deputy Michael Minton and his partner were on patrol in an unmarked vehicle, when they saw Andrew Krantz make several unsuccessful attempts to activate a gasoline pump with a credit card. Deputy Minton observed Krantz return to his vehicle, with Brian Baudier in the front passenger seat, and drive east on Judge Perez Drive. As Krantz drove, he made several erratic, un-signaled lane changes. The officers activated their lights, and effected a traffic stop. Before Krantz exited the vehicle, Officer Minton observed him place an object into his seat. The officer ordered Baudier to exit the vehicle also, and secured the two at the rear of the Krantz vehicle. Officer Minton inspected the interior of the Krantz vehicle, and retrieved a Marriott Hotel card bearing the name “Dan Ryan”. Krantz and Baudier denied any knowledge of the card, and after giving Minton their names, addresses and telephone numbers, he released them. Minton subsequently learned that the card was reported stolen. He notified the NOPD, and arrest warrants were issued for Krantz and Baudier. Krantz turned himself in, and surrendered a rock-blade silver knife, which Minton released to Detective Puigh of the NOPD.
I,NOPD Officer Ronald Puigh’s investigation of the Ryan robbery developed Brian Baudier and Andrew Krantz as suspects. Officer Puigh assembled two photographic lineups. From one of the lineups, the victim identified Brian Baudier as the assailant holding the knife; however, the victim was unable to identify the other assailant from the second lineup. After Puigh took Krantz into custody from St. Bernard Parish authorities, Krantz gave handwritten and tape-recorded statements, which resulted in Krantz being charged as an accessory after the fact of armed robbery. Brian Baudier was arrested by Slidell authorities, and turned over to the NOPD.
Colleen Steward testified that her son, Brian Baudier, and Scott Poland[2] bear a striking resemblance to one another.
Brian Baudier testified that he, Andrew Krantz and Scott Poland socialized with friends, Rebecca Williams and Shane Boise, at a French Quarter bar on the night of December 12, 1995. The group left the bar at about 8:00 p.m. to go home. Krantz and Poland walked ahead of Baudier, Williams and Boise. Baudier noticed Krantz and Poland engage in a brief conversation with a pedestrian, and then run away. The five friends regrouped at their vehicle and when Baudier asked Krantz and Poland what happened between them and the man walking in the French Quarter, they dismissed his question. The group drove to Chalmette, where they visited another friend for approximately forty-five minutes. Krantz and Baudier left the house to get gas for their drive to Slidell. When the pair arrived at the gas station, Krantz acted “foolish”, and tried to use a “credit card” to activate the pump. St. Bernard Parish deputies pulled them *701 over after they left the gas station, |4and discovered the “credit card” -in the vehicle. Baudier denied knowledge of the card. The officers took their names, addresses and telephone numbers, telling them that if the card were stolen, the officers would contact them. Krantz and Baudier drove to Krantz’s brother’s house in Slidell.

ERRORS PATENT

A review for errors patent on the face of the record reveals none.
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant alleges that the State failed to present sufficient evidence to support a conviction of first degree robbery. He argues that he did not match the description the victim gave the police the night of the incident.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of act could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it | fibelieves the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Ragas at p. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, p. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
In this case, the night of the incident, the victim described his assailant as just under six feet tall, weighing less than two hundred pounds and wearing a shirt over a white or light green T-shirt. The victim noted the suspect’s dark eyes, bushy eyebrows and distinctively shaped ears. The day after the incident, without hesitation, *702 the victim identified the defendant from a photo line-up as the men who robbed him while armed with a knife. Officer Minton retrieved the victim’s hotel card from the defendant the night of the robbery. The defendant told the officer that the card belonged to his “girlfriend’s husband.” The victim made an in court identification of the defendant as the knife-wielding assailant and Officer Minton confirmed that the defendant was in possession of the victim’s card the night of the incident. The evidence presented at trial supports the defendant’s conviction for first degree robbery. This assignment is without merit.
I,ASSIGNMENT OF ERROR NUMBER 2
In assignment of error number two, the defendant argues that the trial court allowed inadmissible other crimes evidence during cross-examination and during the State’s closing argument.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence due to the substantial risk of grave prejudice to the defendant. To avoid the unfair inference that a defendant committed the crime charged simply because he is a person of bad character, other crimes evidence is inadmissible unless it has an independent relevancy besides merely showing a criminal disposition. La. C.E. art. 404 B; State v. Hills, 99-1750, (La.5/16/00), 761 So.2d 516, 520.
During the State’s cross-examination, defense counsel objected to the prosecutor eliciting testimony concerning the defendant’s ownership and discharge of weapons. The allegedly improper remark was: “You only own shotguns and handguns that you discharge — .” The defendant admitted owning a shotgun but denied that he ever owned a handgun. Nevertheless, the defendant claims that the other crimes evidence served no purpose other than to unfairly prejudice him.
A review of the trial transcript shows that defense counsel first elicited other crimes evidence during direction examination:
Q. Now, Mr. Baudier you have a prior felony conviction is that correct?
A. Yes, sir, it’s for illegally discharging a firearm when I was about 17 or 18 ... Some friends and I were outside in a yard ... shooting some shotguns ... they put us under arrest and some charges were ... arrested us for shooting guns around the house ...
|7The prosecutor’s question was merely cumulative of earlier testimony elicited by defense counsel. It did not prejudice the defendant.
The defendant next argues that the trial court erred in allowing the State’s closing argument reference to the fact that Scott Poland did not appear at trial “because he was in fear and received threats from the defendant.”
The scope of closing argument “shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state’s rebuttal shall be confined to answering the argument of the defendant.” La.C.Cr.P. art. 774. However, a prosecutor retains “considerable latitude” when making closing arguments. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 374, cert. denied, Taylor v. Louisiana, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). Further, the trial judge has broad discretion in controlling the scope of closing arguments. State v. Casey, 99-0023, (La.1/26/00), 775 So.2d 1022. During closing argument, defense *703 counsel posited that the defendant was innocent and that the evidence pointed to Scott Poland as the perpetrator. Defense counsel emphasized that it was Poland who turned over the knife to the authorities, not Krantz, and asserted that Poland failed to appear at trial, in spite of being subpoenaed, because he was hiding his guilt.
The State countered defense counsel’s remarks arguing that there was no evidence Poland was involved in the crime, and that Poland’s absence could be attributed to fear of reprisal from the defendant. In rebuttal closing argument, the State has the right to answer the arguments of defendant. La.C.Cr.P. art. 774; State v. Adams, 98-2062 (La.App. 4 Cir. 8/4/99), 752 So.2d 186. The State’s comments were a response to defense counsel’s closing argument and did not exceed the | ^bounds of La.C.Cr.P. art. 774. Even if the State’s argument was improper, a conviction or sentence will not be reversed for improper closing argument unless the appellate court is thoroughly convinced the remarks influenced the jury and contributed to the verdict. State v. Ricard, 98-2278, (La.App. 4 Cir. 1/19/00), 751 So.2d 393, writ denied 2000-0855 (La.12/8/00), 775 So.2d 1078. Even where the prosecutor’s statements are improper, credit should be accorded to the good sense and fair-mindedness of the jurors who have heard the evidence. Id. citing State v. Kyles, 513 So.2d 265, 275 (La.1987), cert. denied, Kyles v. Louisiana, 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988).
In light of the victim’s unequivocal identification of the defendant as his assailant, it cannot be said that the jury’s verdict was the result of the argument made by the prosecutor, but rather a result of the evidence of defendant’s guilt. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3

In his third assignment of error, the defendant claims the trial court improperly adjudicated him a multiple offender. He asserts the State failed to prove that his guilty plea to a prior felony was made knowingly and voluntarily.
Where a prior conviction resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights, and that he knowingly waived those rights prior to the guilty plea, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Shelton, 621 So.2d 769 (La.1993). If the defendant denies the allegations of the bill of information, the State has the burden of proving the existence of the prior guilty pleas, and that the defendant was represented by counsel. Shelton, 621 So.2d at 779. Once the State meets this burden, defendant must produce some affirmative evidence of an | infringement of his rights or of a procedural irregularity. Thereafter, the State must prove the constitutionality of the plea. Id. at 779.
In proving the constitutionality of the plea, the State must produce either a “perfect” transcript of the Boykin colloquy between the defendant and the trial judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an “imperfect” transcript. Shelton, 621 So.2d at 780. If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary. Id.
In this case, the State filed the multiple bill charging the defendant with being a second felony offender. On March 22, 1999, the defendant filed written objections to the multiple bill. At the multiple bill hearing on April 15, 1999, the defendant’s *704 parole officer, Philip Cook, testified that on October 31, 1990, the defendant pled guilty to Illegal Use of a Weapon for which he received a two year sentence, suspended, and four years supervised probation. On July 13, 1992 his probation was revoked and his two-year sentence made executory. Officer Cook confirmed the defendant’s identity in court and produced a photograph of the defendant and documents evidencing the prior conviction, including copies of the bill of information and minutes of the sentencing and revocation hearings. The State also produced the minute entry documenting the guilty plea from St. Tammany Parish bearing docket number 192-711. The minute entry states in part:
... the defendant being present in open Court attended by his Counsel ... entered a plea of guilty herein to ... having in his possession a firearm which has not been registered ..., to-wit: sawed off shotgun, and ... intentional or criminally negligent discharge of a firearm ... whereupon the Court had the defendant sworn and questioned him as to his knowledge of charge against him and the penalties for the same, his right to an attorney and one free of charge, Imif necessary, his right to trial by jury, his right to confront his accusers, his right against self-incrimination, and the Court having informed the defendant that a plea agreement has been made between the State and the Defense and with the Court’s approval has been agreed upon, and the Court being satisfied that the defendant is making a free and voluntary waiver of his constitutional rights ...
The defendant argues the State failed its burden of proof by relying on only the minute entry. He alleges that in the absence of a “perfect” transcript of his guilty plea colloquy, Shelton mandates the production of a “combination” of exhibits to prove the plea was knowingly and voluntarily made.
The defendant misstates the law concerning the requisite proof of a prior conviction. Shelton requires the State to prove the existence of the guilty plea and that the defendant was represented by counsel at the time he made the plea. Sufficient proof that the defendant was fully Boykinized when he pled guilty to the predicate offense exists where a minute entry reflects that the trial judge advised the defendant of his rights against compulsory self-incrimination, to a trial by jury or judge, and to confront his accusers and that the defendant personally waived each of these rights. State v. Bland, 419 So.2d 1227 (La.1982). In fact, the minute entry in the instant case appears even more comprehensive than that quoted in Bland and Bland was cited in several places in Shelton. Subsequent to Shelton, State v. Brady, 32,909, p. 3 (La.App. 2 Cir. 12/30/99), 748 So.2d 1280, 1282 (citing Bland), stated that the State could meet its burden with “either the transcript of the plea or the minute entry.” [Emphasis added.] See also State v. Boudreaux, 99-1017, p. 16 (La.App. 5 Cir. 2/16/00), 756 So.2d 505; State v. Pertuit, 98-1264, p. 3 (La.App. 5 Cir. 4/27/99), 734 So.2d 144; State v. Ursin, 98-435, p. 3 (La.App. 5 Cir. 10/28/98), 720 So.2d 1248, 1250.
11In this case the State met its initial Shelton burden via the minute entry. Thereafter, the burden of proof shifted to the defendant to rebut the presumption of regularity by any affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. The defendant did not bear .that burden. Accordingly, the trial court did not err in adjudging the defendant a second felony offender. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 4
By this assignment, the defendant claims the trial court erred in denying his *705 motion to quash based upon the State’s failure to commence trial within the time limits of La.C.Cr.P. art. 578.
It is undisputed that the applicable period for bringing the defendant to trial on this charge was two years. La. C.Cr.P. art. 578(2). Pursuant to La. C.Cr.P. art. 580, the filing of a motion to quash or other preliminary plea suspends the running of the periods of limitation until the ruling of the court, “but in no case shall the state have less than one year after the ruling to commence the trial.” La.C.Cr.P. art. 580; State v. Campbell, 97-0358 (La.App. 4 Cir. 5/20/98), 715 So.2d 488, 494, writ denied, 98-2485 (La.2/12/99), 738 So.2d 564. A motion to continue trial, filed by the defendant or jointly with the State, constitutes a preliminary plea under La.C.Cr.P. art. 580. State v. Blazio, 99-0765, p. 3 (La.App. 4 Cir. 3/15/00), 756 So.2d 606, 608. When a defendant moves to quash the charges against him due to a violation of La.C.Cr.P. art. 578, the State “bears a heavy burden to demonstrate either an interruption or a suspension of the time limit such that prescription will not have tolled.” State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286.
In this case, the bill of information was filed February 16, 1996 and the matter was tried May 14, 1998. Defendant was arraigned on February 23, 1996 |1?and filed motions to suppress which were heard and denied on August 23, 1996. On October 17, 1996, the defense re-urged suppression motions, and filed a motion to quash, arguing that because of the delay in bringing the matter to trial, defense witnesses were unavailable.[3] The motion to quash was heard and denied the morning of trial. Accordingly, the State did not exceed the two-year limitation. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 5
In a final assignment, the defendant complains that the trial court imposed an excessive sentence, did not comply with La.C.Cr.P. art. 894.1, and erred in denying his motion for reconsideration of sentence.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2984 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Webster, 98-0807, p. 3 (La.App. 4 Cir. 11/10/99), 746 So.2d 799, 801, reversed on other grounds, State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d *706 1215, 1217. Courts have the power to declare a sentence excessive even if it falls within the statutory limits. State v. Sepulvado, 367 So.2d 762 (La.1979).
La.C.Cr.P. art. 894.1(C) provides that “the court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.” Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in the light of the particular circumstances of the case. State v. Quebedeaux, 446 So.2d 1210, 1211 (La.1984). Trial courts have broad discretion in the imposition of sentences within statutory limits, and a sentence imposed should not be set aside as excessive in the absence of manifest abuse of that discretion. State v. Trahan, 425 So.2d 1222 (La.1983).
The trial court’s failure to comply with La. C. Cr. P. art. 894.1 does not automatically render the sentence invalid. A sentence will be upheld if the record clearly illumines the sentencing choice and reflects that the sentence is not excessive. State v. Smith, 430 So.2d 31 (La.1983); State v. Gillet, 99-2474 (La.App. 4 Cir. 5/10/00), 763 So.2d 725; State v. Nelson, 98-2405 (La.App. 4 Cir. 11/24/99), 747 So.2d 1224. The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly demonstrates an adequate factual basis for the sentence l14imposed, resen-tencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); Gillet, supra; Nelson, supra.
The penalty range for first degree robbery as a second felony offender is imprisonment for not less than twenty nor more than eighty years. La.R.S. 15:529.1 A(l)(a). Although the sentencing transcript does not indicate the trial judge considered La.C.Cr.P. art. 894.1, the record presents a factual basis, which supports the sentence imposed.
The defendant was charged with armed robbery; however, the jury returned the lesser responsive verdict of first degree robbery. The defendant’s prior conviction was for a crime of violence. La. R.S. 14:94; La. R.S. 14:29(13)(ee). His second offense involved the threat of the use of a dangerous weapon. Thus, the defendant has twice demonstrated violent propensities, suggesting an escalation of his criminal behavior. As a second felony offender, he could have received a maximum sentence of eighty years but instead received a mid-range sentence. This assignment is without merit.

DECREE

For the foregoing reasons, the defendant’s conviction and sentence are hereby affirmed.

CONVICTION AND SENTENCE AFFIRMED.

. Andrew Krantz is a fugitive from justice.

. Throughout the proceedings, Scott Poland’s name is spelled interchangeably "Poland” or "Polen”. Poland accompanied Krantz when he turned himself in to St. Bernard Parish authorities, and it was Poland who surrendered the knife to authorities.

. Although the defense subpoenaed witnesses for an earlier trial date, the record contains no indication the defense subpoenaed witnesses for the May 14, 1998 trial.