621 So.2d 769 (1993)
STATE of Louisiana
v.
Mike SHELTON.
No. 92-K-3070.
Supreme Court of Louisiana.
July 1, 1993.
*770 Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Valentin M. Solino, Jack Peebles, Asst. Dist. Attys., for applicant.
Sherry Watters, Richard B. Graves, New Orleans, for respondent.
KIMBALL, Justice.[*]

ISSUE
The issue presented herein is whether there was sufficient proof of a prior felony conviction under La.R.S. 15:529.1 where the State, at the habitual offender hearing, introduced a minute entry which stated the judge "gave the Defendant his rights" and a well-executed guilty plea/waiver of rights form, rather than introducing the actual transcript of the plea colloquy.

FACTS
On August 15, 1990, defendant Mike Shelton was found guilty of purse snatching under La.R.S. 14:65.1 and was sentenced *771 to twenty years at hard labor. Thereafter, the State filed a bill of information pursuant to La.R.S. 15:529.1, the Habitual Offender Law, seeking to have defendant declared a second offender based on a March, 1989 conviction for possession of marijuana with intent to distribute, in violation of La.R.S. 40:966. After a hearing, the trial court found the defendant to be a second offender and resentenced him to forty years at hard labor without benefit of parole, probation, or suspension of sentence.
Defendant appealed to the fourth circuit court of appeal alleging, inter alia, the State failed to introduce sufficient proof at the habitual offender hearing that the guilty plea upon which the prior conviction was based was voluntary. The court of appeal agreed and reversed the trial court's finding that defendant was a second offender, concluding that the State's evidence of the prior conviction, which included a minute entry and a waiver of rights form, was insufficient to meet the State's burden of proving voluntariness of the guilty plea.[1]
The State sought a writ of certiorari from this court which was granted.[2]

PRIOR JURISPRUDENCE
In Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969) the United States Supreme Court held on appeal of a criminal conviction that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." Rather, the trial court should "canvass [] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence."[3] Concerning the record of such a guilty plea on appeal, the Court found that because a guilty plea constitutes a waiver of several constitutional rights, including the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers, the prosecution was required to "spread on the record the prerequisites of a valid waiver" of these rights. Thus, the Court held that it could not presume a voluntary and knowing waiver of these three rights "from a silent record." To insure an adequate record on review, the Court stated a trial court would be "best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences." Boykin, 395 U.S. at 244 n. 7, 89 S.Ct. at 1713 n. 7 (quoting Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A.2d 196, 197-98 (1968)).
In an attempt to comply with Boykin, we held in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), a post-conviction proceeding, that a guilty plea will be considered knowingly and voluntarily *772 made only if the accused was informed of and made an articulated waiver of his right to jury trial, his right to confront his accusers, and his privilege against self-incrimination.[4]
In State ex rel. LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557 (1972), another post-conviction proceeding attacking a guilty plea, this court held that a determination of voluntariness of a guilty plea is not limited by Boykin to the verbatim entry made at the time of the plea but rather is determined from the entire record, which can include evidence taken at a "reconstruction" of the plea proceedings at a hearing when the plea is later attacked.[5] This court then decided to limit Jackson's requirement (that the defendant be informed of and specifically waive the three Boykin rights) to guilty pleas entered after December 8, 1971, the date the Jackson decision became final, rather than apply it to guilty pleas entered after June 2, 1969, the effective date of Boykin.[6]
In State v. Lewis, 367 So.2d 1155 (La. 1979), the court was faced with deciding whether to extend its requirements in LeBlanc and Jackson to the determination of the validity of guilty pleas sought to be used at habitual offender hearings. In Lewis, the defendant objected to the use of his prior guilty plea taken February 16, 1970 because the proof put forth by the State, minutes from the taking of the guilty plea, did not affirmatively show a waiver of the right to confront his accusers. We held that reconstruction of the guilty plea at a later hearing, a procedure available under LeBlanc in a post-conviction attack on a guilty plea, was not available in a case involving the use of a plea of guilty in an habitual offender hearing because the latter proceeding usually takes place several years after the guilty plea was taken. "The more time that passes, the more difficult it will be to reconstruct the plea of guilty and make a reasonable accurate determination of its free and voluntary nature." Lewis, 367 So.2d at 1160.[7]
*773 In State v. Holden, 375 So.2d 1372 (La. 1979), another case involving a collateral attack on a guilty plea sought to be introduced at an habitual offender hearing, this court placed several limitations on the broad scope of Lewis. Holden overruled Lewis to the extent that it could be held to apply to federal and non-Louisiana convictions based on guilty pleas sought to be used to enhance a defendant's sentence as an habitual offender. In those situations, the ultimate burden of proof was placed on the defendant challenging the plea.
[T]he state is required only to prove the conviction by a plea of guilty with representation by counsel. The defendant has the burden of proving that he did not waive his constitutional rights in making the plea, if the plea was taken subsequent to Boykin's requirement in this regard. Unless the colloquy at the time of the plea of guilty affirmatively shows substantial defect in this regard, the defendant will not be permitted to make any other collateral attack beyond the colloquy upon these otherwise-valid guilty pleas in the enhanced-punishment proceedings.[8]
Lewis was also overruled to the extent that it applied to Louisiana convictions based on guilty pleas taken prior to December 8, 1971, the date of Jackson's finality. The same approach applicable to federal and non-Louisiana convictions was held by this court to apply to these guilty pleas.
As for guilty pleas taken in Louisiana subsequent to December 8, 1971 and which are later challenged in an habitual offender proceeding, "[u]pon objection by defense counsel that the guilty plea does not affirmatively show it was taken in compliance with Jackson and LeBlanc," the State will have the burden of showing the defendant was informed of and made a voluntary waiver of the three Boykin rights through use of a contemporaneous record of a Boykin examination.
This court's motivation in Holden for creating the various limitations on Lewis was its belief that the Boykin decision had merely "constitutionalized (and made applicable to the states through the 14th Amendment) the requirements of Federal Rule of Criminal Procedure 11," Holden, 375 So.2d at 1374, and that the United States Supreme Court in United States v. Timmreck, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), had indicated that "a plea of guilty may not be considered invalid for purposes of collateral attack simply because of formal defect in the taking of the plea (i.e. a violation of Rule 11) ... in the absence of a showing of special prejudice to the defendant." Rather, "the accused has the affirmative burden of showing that he was in fact not advised, either by the court or through his counsel, of the particular consequences of his plea that were not touched upon in an otherwise sufficient colloquy." Holden, Id. Thus, for federal convictions and non-Louisiana convictions, we believed that Timmreck, insofar as it implicitly placed a limitation on Boykin's application, allowed us to take the ultimate burden of proof off of the state and place it instead on the defendant in a collateral attack of a guilty plea. We decided to retain Lewis, however, and to not further incorporate the implications of Timmreck, for Louisiana convictions based on guilty pleas taken after December 8, 1971, "[a]s a matter of state law, to enforce the state policies incorporated in the Jackson and LeBlanc decisions." Holden, 375 So.2d at 1375-76 (emphasis added). Thus, for these guilty pleas, we retained Lewis' fundamental requirement: that in a multiple offender hearing, the state must provide *774 a contemporaneous record which shows the "accused was informed of and made a knowing waiver of his right to jury trial, his right to confront his accusers, and his privilege against self-incrimination." Holden, Id. at 1375 (emphasis added).[9]
In State v. Nelson, 379 So.2d 1072 (La. 1980), this court explained the State's burden of proof in an habitual offender proceeding where the defendant has not objected to the predicate for the State's evidence that the guilty plea was knowing and voluntary. We stated that if the defendant does not object on this ground, the State, in order to establish the knowing and voluntary guilty plea, is required only to prove that the prior conviction resulted from the defendant's guilty plea at which he was represented by counsel.[10] See also State v. Jackson, 389 So.2d 69 (La.1980) and State v. Jefferson, 379 So.2d 1389 (La.1980), overruled on other grounds by State v. Mack, 403 So.2d 8 (La.1981).

ANALYSIS
Subsequent to Lewis, Holden, and Nelson, the basic approach to the use of guilty pleas in an habitual offender proceeding has not significantly changed. We have consistently held that in order to enhance a sentence with a prior guilty plea, the State bears the burden of proving the guilty plea was constitutionally taken, and, to meet its burden, the State must introduce a contemporaneous record of a Boykin examination which demonstrates the guilty plea was free and voluntary and which includes a waiver of the three constitutional rights specified in Boykin.[11] The cases have *775 turned instead on one issue: whether the State has met its burden of producing a "contemporaneous record" which reflects a specific waiver of the three rights where it has submitted anything other than a "perfect" transcript of the colloquy.[12]
Certainly, the introduction of a transcript of the plea colloquy between the judge and the defendant which indicates that the plea was voluntary and which includes an articulated waiver of the three Boykin rights would be sufficient to meet the State's burden of proving through a contemporaneous record a guilty plea was taken in compliance with Boykin, and, indeed, is the method of proof preferred by this court. In Jackson, this court noted that by having a transcript made of the plea colloquy, "the trial court wisely avoided the expense and uncertain testimony of a later evidentiary hearing on the post-conviction remedy." 255 So.2d at 90. Not only does the use of a "perfect" transcript avoid the future uncertainty and expense of an evidentiary hearing, but it also provides a reviewing court with the best evidence of whether the guilty plea was taken in compliance with Boykin.[13]
Requiring the State to meet its burden of proof in an habitual offender hearing only through the use of a "perfect" transcript of the guilty plea colloquy, however, has never been specifically required by this court. Jackson pretermitted discussion of whether the State could meet its burden of proof through the use of a minute entry since neither the transcript nor the minute entry showed the defendant was informed of and waived his three Boykin rights.[14] The court in LeBlanc, noting that a requirement of a verbatim transcript would allow "the unfortunate lapse of a court reporter" to defeat a conviction, irrespective of how well the judge handles the guilty plea, concluded that Boykin allowed a court to look to the entire record for evidence of voluntariness, and that such a record could include testimony taken at a later hearing reconstructing the taking of the plea. In Lewis, this court did not reject the use of court minutes per se, but only held that the minute entry in that particular case did not show an articulated waiver of the three rights. In Holden, we described the Lewis court's holding as allowing the State to prove a prior guilty plea sought to be used to enhance punishment by use of "the minutes or transcript of the plea of guilty." In State v. Bland, 419 So.2d 1227, 1232 (La.1982) this court stated "the state may affirmatively prove that the defendant ... was fully Boykinized by either the transcript of the plea of guilty or by the minute entry." See also State v. Lynch, 441 So.2d 732, 734 (La.1983) where this court quoted approvingly from Bland, stating the State may meet its burden of proof in an habitual offender proceeding by either the transcript of the plea of guilty or by the minute entry.
It is true that in State v. Bolton, 379 So.2d 722 (La.1979) and in Sharp, supra, this court stated that in order to use a prior plea of guilty dated after December 8, 1971 to enhance punishment of a subsequent conviction, the State must, if objection is *776 made to the plea's voluntariness, affirmatively show through the use of a "contemporaneously recorded transcript" that the plea was voluntary. However, the Bolton and Sharp courts cited Holden and Lewis for this proposition, and, as explained above, Holden specifically stated that Lewis allowed the State to meet its burden of proof with either the minutes or the transcript. Furthermore, these statements appear to be dicta.[15] In Bolton, the prior guilty plea was taken in 1966; therefore, the State only had to prove under Holden that the plea was made with representation of counsel. In Sharp, the State had introduced the transcript of the colloquy; therefore, the court did not have to decide if proof other than the transcript would be sufficient.[16] Thus, it appears this court has never required the State to meet its burden of proof in an habitual offender proceeding solely through the introduction of the transcript of the taking of the plea.
On the contrary, we have found a variety of modes of proof, other than only a "perfect" transcript, to be sufficient to meet the State's burden of proof in an habitual offender hearing. The dominant thread running through the cases appears only to require that the court must determine from the entire record that the defendant was informed of and specifically waived his three Boykin rights.[17] We have allowed a guilty plea form to supplement an "imperfect" transcript of the colloquy, i.e. one which reveals the judge and the defendant discussed a waiver of only some of the Boykin rights. For example, in State v. Dunn, 390 So.2d 525 (La.1980), this court found the record contained a sufficient affirmative showing of a knowing and express waiver where the record contained a transcript of the plea colloquy indicating an explicit waiver of two of the Boykin rights and a plea of guilty form signed by the defendant, his attorney, and the judge which contained an express waiver, initialed by defendant, of the third right. Likewise, in State v. Halsell, 403 So.2d 688, 690 (La.1981) (emphasis added), we noted that a "colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea." Thus, even though the transcript of the colloquy revealed that the judge did not expressly obtain a waiver of defendant's privilege against self-incrimination, we nevertheless found that Jackson's requirements were met where the written waiver of rights/plea of guilty form signed by defendant and his attorney stated that the attorney had informed defendant of his privilege against self-incrimination and that defendant had voluntarily waived it. See also State v. Washington, 406 So.2d 191 (La.1981).
In other cases, we have found a minute entry alone to be sufficient under Lewis and Holden. In State v. Bland, supra, an habitual offender case, we found the State had affirmatively proven the defendant was fully informed of and voluntarily waived his three Boykin rights where the State introduced a minute entry which stated "the Court inquired of the defendant if he understood that by entering this plea he as [sic] waiving his right to trial by jury, waiving his rights against compulsory self-incrimination and waiving the right to be confronted by the witnesses against him. The defendant replied affirmatively."[18] *777 Most importantly, for our purposes, we have also held the State has met its burden of proving a prior guilty plea in an habitual offender hearing where it submitted a very general minute entry and a well-executed plea of guilty form. In State v. Tucker, 405 So.2d 506 (La.1981), defendant argued his sentencing as an habitual offender must be set aside due to the State's failure to prove at the habitual offender hearing Boykinization of the prior guilty plea. At the hearing, the State submitted a copy of the minute entry (which indicated the judge "questioned the accused under oath regarding his plea of guilty") and a copy of a plea form initialled several times by defendant, which stated defendant understood and waived his three Boykin rights. The form was also signed by defendant's counsel and the trial judge. We held these two documents provided an affirmative showing in the record that the accused made a knowing and voluntary waiver of his rights.
We think that the minute entry concerning the abbreviated colloquy along with the well executed `waiver of rights' form signed by defendant, his attorney and the trial judge constitute a sufficient affirmative showing in the record that defendant knowingly and intelligently waived his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers.[19]

APPLICATION OF THE PRIOR JURISPRUDENCE TO THE FACTS
At the habitual offender hearing, defendant's attorney objected to the evidence the State introduced to prove the prior conviction; therefore, the burden of proof was on the State to demonstrate an "affirmative showing in the record that the accused at the time he entered his guilty plea knowingly and voluntarily waived his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers." Tucker, 405 So.2d at 509.
In this case, the State submitted a minute entry which stated the judge "gave the Defendant his rights." Also introduced was a "Waiver of Constitutional Rights/Plea of Guilty" Form. The form listed several rights, including the right to trial by jury, the privilege against self-incrimination, and the right to confront accusers. After each right listed were the defendant's initials, indicating a waiver of those rights. The form also stated: "I understand all of the legal consequences of pleading guilty and wish to plead guilty at this time because I am in fact guilty of this crime," which statement was initialled by the defendant. Most importantly, the form stated the following: "The court has addressed me personally as to all of these matters and he has given me the opportunity to make any statement I desire." The form was initialled several times by the defendant and was signed by the defendant, his attorney, and the trial judge. We conclude, consistent with Tucker and Santiago, that the State introduced evidence sufficient to meet its burden of making an affirmative showing that the guilty plea was informed, free and voluntary, and made with an articulated waiver of the three Boykin rights.
La.R.S. 15:529.1 merely requires "proof of a prior felony conviction." In Lewis, however, in order to ensure that our application of Boykin to an habitual offender proceeding would not result in the subsequent reversal of convictions by the United States Supreme Court for non-compliance with Boykin, we held due process required us to place on the State the burden of proving adequate Boykinization of a *778 prior guilty plea sought to be used in a later habitual offender proceeding. The United States Supreme Court has recently stated, however, Boykin does not require such, and, indeed, "the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant" when the defendant has collaterally attacked a final conviction on constitutional grounds.[20]

Parke v. Raley
In Parke v. Raley, ___ U.S. ___, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), a criminal defendant challenged as unconstitutional under the Due Process Clause of the Fourteenth Amendment Kentucky's largely jurisprudential procedure for determining a prior guilty plea's validity under Boykin when the plea was used to find a defendant an habitual offender. The defendant claimed the procedure was unconstitutional because it did not require the State to carry the entire burden of proof. The Kentucky Supreme Court had in a previous case held that if the defendant files a proper motion to suppress evidence of his prior convictions in an habitual offender proceeding, the burden was on the State to prove the fact of the guilty pleas and that defendant was represented by counsel at the time they were taken. The burden then shifted to the defendant to show any infringement of his rights or irregularity of procedure in the taking of the plea. If defendant met this burden of "production", the burden of persuasion then shifted to the State to show the conviction was entered in a manner that did in fact protect the defendant's rights. The United States Supreme Court held that this scheme "easily passes constitutional muster."[21]
The Sixth Circuit Court of Appeals in Parke had held the scheme was unconstitutional because it permitted the State to carry its burden of persuasion upon bare proof of conviction where the defendant was unable to offer rebuttal evidence. This approach, the appellate court believed, violated Boykin's requirement that a voluntary waiver of rights could not be presumed from a silent record. The United States Supreme Court, however, saw no conflict between Boykin and Kentucky's scheme, nor did it find that Boykin prohibited the State from meeting its ultimate burden of proof with evidence other than a transcript.

Boykin involved direct review of a conviction allegedly based upon an uninformed guilty plea. Respondent, however, never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding. To import Boykin's presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights. Although we are perhaps most familiar with this principle in habeas corpus actions, it has long been applied equally to other forms of collateral attack, see e.g., Voorhees v. Jackson, 35 U.S. (10 Pet.) 449, 472 9 L.Ed. 490 (1836) (observing, in a collateral challenge to a court-ordered sale of property in an ejectment action, that "[t]here is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears"). Respondent, by definition, collaterally attacked his previous convictions; he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments.
... On collateral review, we think it defies logic to presume from the mere unavailability of a transcript (assuming *779 no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. In this situation, Boykin does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained.
... Our precedents make clear ... that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant.[22]
In response to defendant's argument that it would be difficult for him to put on any affirmative proof of the invalidity of a guilty plea entered several years earlier, the Supreme Court noted there would be "practical difficulties" encountered by either party if assigned a burden of proof; however, the Court stated: "`The Due Process Clause does not ... require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused.'" Parke, ___ U.S. at ___, 113 S.Ct. at 524 (quoting Medina v. California, ___ U.S. ___, ___, 112 S.Ct. 2572, 2573, 120 L.Ed.2d 353 (1992)). The Court went on: "To the extent that the government fails to carry its burden due to the staleness or unavailability of evidence, of course, its legitimate interest in differentially punishing repeat offenders is compromised. In light of the relative positions of the defendant and the prosecution in recidivism proceedings, we cannot say that it is fundamentally unfair to place at least a burden of production on the defendant." Parke, ___ U.S. at ___, 113 S.Ct. at 525.
The Court found no "historical tradition or contemporary practice" which would render Kentucky's shifting burdens fundamentally unfair. Furthermore, such a practice was more than consistent with the approach under federal recidivist statutes where the entire burden of proving the invalidity of a prior conviction based on a guilty plea is placed on the defendant. In light of the above, the Court held "the Due Process Clause permits a State to impose a burden of production of a recidivism defendant who challenges the validity of a prior conviction under Boykin." Parke, ___ U.S. at ___ _ ___, 113 S.Ct. at 525-26.
In light of the fact that Parke holds Boykin does not require that the entire burden be placed on the prosecution in a recidivism proceeding and because our present system of placing the entire burden on the State fails to give any presumption of regularity to a final conviction used in an habitual offender hearing, we today revise our previous scheme allocating burdens of proof in habitual offender proceedings.[23]
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.[24] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden *780 of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.[25] We note that this new procedure will not only give appropriate significance to the presumption of regularity which attaches to judgments of conviction which have become final, but will also provide an advantage to defendants who were previously under Lewis unable to introduce any extra-record evidence and whose guilty pleas were heretofore under Tucker found constitutionally valid by mere proof of a minute entry and a guilty plea form.
The State in this case has submitted sufficient proof of the existence of the prior guilty plea and that defendant was represented by counsel at the time it was taken. The case is remanded to allow the defendant an opportunity to attempt to meet his burden of production at a hearing to be held consistent with this opinion.
REVERSED AND REMANDED.
MARCUS, J., concurs and assigns reasons.
WATSON, J., concurs for the reasons assigned by MARCUS, J.
MARCUS, Justice (concurring).
I agree with the majority's recognition that the evidence submitted by the state (the minute entry stating the judge gave defendant his rights and a waiver of rights form initialled by defendant, his attorney and the trial judge) are sufficient to meet its burden of proving a prior guilty plea for purposes of the habitual offender law under State v. Tucker, 405 So.2d 506 (La. 1981). While we noted in Tucker that the direct, three-right colloquy between the trial judge and the defendant is preferable and should be encouraged, we went on to hold that the minute entry of the abbreviated colloquy along with a well-executed waiver of rights form signed by defendant, his attorney and the trial judge "constitute a sufficient affirmative showing in the record that defendant knowingly and intelligently waived his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers." 405 So.2d at 509. Subsequently, in Parke v. Raley, ___ U.S. ___, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), the Supreme Court held the burden imposed on the state was actually lower than that which we imposed in Tucker. Since the state met its burden under the Tucker procedure, it is clear defendant has received the benefit of greater protections than now required by law. Accordingly, I believe it is unnecessary to remand the case for another hearing. For this reason, I concur in the majority's opinion, but believe it would be preferable to affirm the decision of the trial court finding defendant to be a second offender.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Hall, J., was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] 606 So.2d 1013 (La.App. 4th Cir.1992). The court of appeal also addressed three of the defendant's four remaining assignments of error, finding: (1) defendant's argument that the original sentence of 20 years was excessive became moot when the trial court resentenced the defendant under the multiple bill; (2) the trial court retained jurisdiction to sentence under the Habitual Offender Act after an order of appeal had been entered; and (3) the Habitual Offender Act does not violate constitutional prohibitions against double jeopardy.

Because the appellate court held the defendant was not properly found to be a second offender, it pretermitted discussion of defendant's final assignment of error which alleged the trial court erred by imposing an unconstitutionally excessive sentence after finding the defendant to be a second offender.
[2] 613 So.2d 983 (La.1993).
[3] Boykin, 395 U.S. at 244, 89 S.Ct. at 1712. See also Parke v. Raley, ___ U.S. ___, ___, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992) (citation omitted):

It is beyond dispute that a guilty plea must be both knowing and voluntary. McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).
[4] Because the transcript of the colloquy with the judge in Jackson showed that the accused was not informed of and did not waive his three Boykin rights, the plea of guilty was set aside. The Jackson court pretermitted deciding whether the judge himself must conduct the examination of the defendant or whether a contemporaneous record must be made of the examination.
[5] The court preferred to allow a Boykin waiver to be determined from the entire record because the requirement of a simultaneous verbatim entry of the colloquy would allow "the unfortunate lapse of a court reporter [to defeat] the conviction, irrespective of how well the judge handles the guilty plea." LeBlanc, 259 So.2d at 560.
[6] It was unclear at that time whether Boykin actually required the defendant be informed of and expressly waive the three specific rights articulated in Boykin or whether the inquiry instead turned on the voluntariness of the plea in general based on the totality of the circumstances surrounding the plea. This court noted, however, that the majority of states required only that the trial judge "canvass the matter with the defendant to verify that the plea is freely and understandingly made. In these jurisdictions, the failure to articulate all three rights ... does not invalidate the conviction." LeBlanc, 259 So.2d at 562-63. The court went on, nevertheless, to retain the three-right articulation rule for guilty pleas entered after the date State ex rel. Jackson became final because,

To truncate the rule now, when the jurisprudence is still fluid, would jeopardize hundreds of future convictions, as the trial judges proceed to follow our decision. It will be time enough to tailor our rule when the state and federal jurisprudence solidifies.
Id. at 563.
[7] For the same reason, we then held that although LeBlanc made the Jackson three-right articulation rule applicable in post-conviction challenges to the validity of the guilty pleas, only to those pleas taken after December 8, 1971, we would nonetheless apply the Jackson three-right articulation rule to all guilty pleas taken after Boykin when they were being collaterally attacked in an habitual offender proceeding. Thus, we held:

In a multiple offender hearing, only those previous pleas of guilty may be used to enhance a sentence which are supported by a contemporaneous record of a Boykin examination demonstrating the free and voluntary nature of a plea of guilty with an articulated waiver of the constitutional rights required by Boykin v. Alabama.
Lewis, 367 So.2d at 1160. Because the minute entry from the taking of the plea did not specifically show a waiver of the defendant's right to confront his accusers, we found the trial court erred in finding the defendant to be a multiple offender.
[8] Holden, 375 So.2d at 1376. In State v. Smith, 415 So.2d 930 (La.1982), we modified this limitation on defendant's burden of proving invalidity of a guilty plea from another state. We held that "[w]here a defendant can show that the transcript of his colloquy cannot be produced he will be allowed to prove by other evidence that he was not informed of his Boykin rights prior to entering his guilty plea." 415 So.2d at 935. We intimated in that opinion that the defendant could testify concerning the circumstances surrounding the taking of his guilty plea in order to meet his burden of proof. Thus, after Smith, Lewis's prohibition against the "reconstruction" of the plea colloquy in multiple offender hearings no longer applies to those guilty pleas where the burden of proof is placed on the defendant under Holden: out-of-state guilty pleas, federal guilty pleas, and Louisiana guilty pleas taken prior to December 8, 1971.
[9] Holden did not enunciate exactly which "state policies" would require, in a multiple offender proceeding, the placing of the burden of proof on the state, the requirement of a contemporaneous record of the waiver, and a waiver which articulates the three specific Boykin rights. However, looking to Jackson and LeBlanc, as directed by the Holden court, some concerns are apparent. In Jackson, we expressed a preference, without deciding whether such was required by Boykin, for an actual transcript of the plea colloquy because it would avoid "the expense and uncertain testimony of a later evidentiary hearing." Jackson, 255 So.2d at 90. See also Smith, 415 So.2d at 934 n. 3. Regarding the state policy behind retention of the three-right articulation rule, in LeBlanc, as explained earlier, this court chose to retain the three-right articulation rule because the federal and nation-wide state court jurisprudence interpreting Boykin had not yet solidified on whether or not Boykin required the three rights be specifically waived. Rather than incur the risk that future guilty pleas might be invalidated by a later U.S. Supreme Court opinion interpreting Boykin if we had held the three rights need not be articulated, the LeBlanc court continued to require the three-right articulation but only for pleas after the effective date of Jackson. LeBlanc, 259 So.2d at 563.

Neither Jackson nor LeBlanc, however, appear to enunciate any state policy which would require the ultimate burden of proof to be placed on the state in a multiple offender proceeding where federal constitutional law does not appear to require such, because those cases dealt with post-conviction proceedings. Furthermore, in Lewis, the first case by this court to discuss Boykin's effect on guilty pleas when collaterally attacked, we appear to have placed the burden on the state seemingly because we believed Boykin required it and not because of any state policy. That Boykin or any federal constitutional law in fact requires the burden of proof to be on the state in a multiple offender hearing has been recently rejected by the United States Supreme Court in Parke v. Raley, ___ U.S. ___, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), discussed infra.
[10] In Nelson, we stated the state's failure to produce a contemporaneous record affirmatively showing a knowing and voluntary waiver of the three Boykin rights shall be treated as a "trial irregularity" in the multiple offender proceeding which is waived by defendant under La.C.Cr.P. art. 841 if he fails to object. However, we noted that defendant's failure to object does not prevent him from raising the lack of a record of the constitutionally required judicial determination that his plea was voluntary in an application for a writ of habeas corpus or motion for new trial. See also State v. Jackson, 389 So.2d 69, 70 (La.1980) (Lemmon, J., concurring) (The irregularity is waived on direct appeal, and the defendant is "relegated to post-conviction relief, at which he will have the burden of proving the invalidity of the convictions because of the ... lack of required Boykinization.").
[11] But see State v. Johnson, 404 So.2d 239 (La. 1981) where this court stated that the state's burden of proof turns not only on whether the defendant has objected but also on the amount of time which had elapsed between the taking of the guilty plea and the collateral attack of that same plea in a subsequent multiple offender hearing. Therein this court stated that in "all recent Louisiana felony cases, the record must affirmatively show that the defendant was adequately advised of the three rights prescribed by Boykin." But, "[i]n the case of pleas entered more than six years ago, the record must show only that the defendant voluntarily pleaded guilty with a full understanding of `the connotation and consequences.'" See also State v. Yarbrough, 418 So.2d 503 (La.1982).

This line of cases seems to be an aberration though, as later cases by this court do not even mention this approach.
[12] By use of the term "perfect" transcript, we mean one which reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin.
[13] For example, in State v. Sharp, 390 So.2d 1288 (La.1980), we held the state met its burden of proof at an habitual offender hearing where it introduced a transcript of the guilty plea colloquy which revealed the plea was voluntarily made with an awareness of its consequences.
[14] Because we held in State v. Williams, 384 So.2d 779 (La.1980) the same standard applicable to the use of guilty pleas in multiple offender hearings also applies to the review of guilty pleas when they are directly attacked either on appeal, in a post-conviction proceeding, or in a habeas corpus action, later cases involving these other procedural circumstances are relevant to a determination of what our standard is in multiple offender hearings.
[15] See also Smith, 415 So.2d at 933 where this court in dictum otherwise unrelated to the case (involving the validity of an out-of-state guilty plea which under Holden requires a different allocation of the burdens of proof) stated the State must introduce a "contemporaneously recorded transcript" of the colloquy in order to meet its burden of proof with respect to Louisiana guilty pleas.
[16] See also Williams, 384 So.2d at 781 where a similar statement made by this court was only dictum because the State had introduced the transcript of the colloquy, and there was no mention of a minute entry.
[17] We note here that our retention of the three-right articulation rule is not at issue in this case. The plea of guilty form specifically articulates the three Boykin rights. Thus, although we must herein determine whether the form plus the general minute entry are sufficient to meet the state's burden of proof, we need not today decide whether the state's burden, if any, should continue to include proof that the three rights were articulately waived.
[18] Bland, 419 So.2d at 1232 n. 8.
[19] Tucker, 405 So.2d at 509. See also State v. Santiago, 416 So.2d 524, 526 (La.1982) wherein this court favorably cited Dunn and Tucker, noting that "[t]he plea of guilty form ... may constitute part of the record for Boykin purposes." In Santiago, the state introduced at a multiple offender hearing a minute entry of the prior guilty plea, which only reflected that defendant was advised of certain unspecified rights, and a plea of guilty form which included a waiver of all of the pertinent rights except for the right to trial by jury. The court implied this would have been sufficient had the plea of guilty form affirmatively shown a knowing waiver of the right to trial by jury.
[20] Parke, ___ U.S. at ___, 113 S.Ct. at 524 (emphasis added) ("Our precedents make clear, however, that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant.").
[21] Parke, ___ U.S. at ___, 113 S.Ct. at 522.
[22] Parke, ___ U.S. at ___ _ ___, 113 S.Ct. at 523-24 (citations omitted) (emphasis added).
[23] Our jurisprudence concerning proof of voluntariness or "Boykinization" of guilty pleas has never distinguished between direct review of a conviction allegedly based upon an uninformed guilty plea and collateral attack of a guilty plea after the conviction is final. See, e.g., Williams, 384 So.2d at 781. In cases involving direct review of a guilty plea before the conviction is final as well as in cases involving attacks on guilty pleas made in post-conviction applications, writs of habeas corpus, and multiple offender proceedings, the burden of proof has been placed on the state. Today, we modify the previously existing allocation and burden of proof for multiple offender cases only.
[24] In this respect, Lewis' holding that a reconstruction of the plea is not available in multiple offender proceedings is overruled. Defendant can attempt to meet his burden of production with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence.
[25] See nn. 6 and 17.