|, GASKINS, J.
The defendant, Gene Fitch, Sr., was charged by bill of information with driving while intoxicated (DWI), third offense. After his motion to quash a prior guilty plea was denied, the defendant pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). He was sentenced to three years of imprisonment, the first six months of which was to be served without benefit of probation, parole or suspension of sentence. The remaining two and a half years were suspended, and the defendant was placed on three years supervised probation. The defendant now appeals. We affirm.
FACTS
On October 20, 1997, Louisiana State Trooper S.D. Wallace observed the defendant’s vehicle cross the fog line twice while traveling in the outside lane of travel on U.S. 165. The defendant then changed lanes to the inside lane of travel. Trooper Wallace saw the defendant’s vehicle cross the double yellow center lines twice. At this point, the trooper pulled the defendant over.
During the stop, Trooper Wallace observed that the defendant’s speech was slurred and his eyes were bloodshot; also, he was unsteady on his feet and he smelled of alcohol. The defendant was asked to perform a number of field sobriety tests, which he either failed or was unable to complete. The defendant was then arrested. He refused to submit to an Intoxilyzer 5000 test.
The defendant was charged by bill of information with DWI, third offense, in violation of La. R.S. 14:98. The bill of information alleged two predicate offenses: (1) a 1990 DWI conviction, docket no. 75305 in the City of West Monroe Court; and (2) a 1991 DWI conviction, docket no. 91-M0050 in the Fourth Judicial District Court.
| ¡^Thereafter, the defendant filed a motion to quash in which he asserted that his 1991 conviction for DWI could not be used as a predicate offense because that guilty plea was taken in a mass Boykin hearing which, he alleged, resulted in an insufficient explanation of his constitutional rights. The transcript showed that the persons pleading guilty replied as a group that they were aware that they were giving up their rights to trial, to remain silent, and to confront witnesses; however, it did not list the defendant’s responses individually.
In a written opinion, the trial court denied the motion to quash, finding that the defendant had not cited any authority to support his proposition that the record must show that the defendant answered separately. The court found that the record established the 1991 plea was entered knowingly and voluntarily.
On July 26, 1999, the defendant entered a Crosby guilty plea to DWI, third offénse, reserving his right to seek review of the denial of the motion to quash. He was sentenced to three years of imprisonment , at hard labor, six months of which to be served without benefit of probation, parole or suspension of sentence. The remaining two and a half years were suspended, and the defendant was placed on supervised probation for three years.
*431 MOTION TO QUASH
The defendant asserts that the trial court erred in denying the motion to quash his 1991 DWI conviction. He argues that his rights were not sufficiently explained to him individually as his guilty plea was entered in a mass proceeding. He further alleges that the transcript does not demonstrate that he waived his Boykin rights because the transcript does not identify him by name.

1991 Boykin transcript

The transcript of the 1991 guilty plea indicates that the defendant was one of five persons entering guilty pleas:
|sBy the court: Alright. Gentlemen and Ms. Frith, I’m going to ask you some questions individually about your background and then I’m going to ask you questions as a group. It’s necessary that you respond out loud to each question so the court reporter can pick this up.... First of all, I want you to give me your full name and address; your age and date of birth; the level of your formal education, i.e., high school, college, GED, et cetera; your place of employment, if any, or your last place of employment and your marital status....
By Mr. Fitch: Gene Fitch. 532 King Street. I’m thirty-nine ... thirty-eight. February 29 of ’52. And I’m employed at Louisiana Purchase Garden and Zoo.
Q. Okay. And how much education do you have?
By Mr. Fitch: The eleventh grade.
Q. Can you read, write, speak and understand the English language?
By Mr. Fitch: Yes, sir.
Q. And you’ve likewise hired Mr. Orum Young to represent you?
By Mr. Fitch: Yes, sir....
Q. Alright. With the exception of Mr. Fitch it’s my understanding that each of you want to tender a plea of guilty to DWI-first offense. Is that correct?
Defendants: Yes, sir.
Q. And, Mr. Fitch, you want to plead guilty to DWI-second?
By Mr. Fitch: Yes, sir.
Q. And the other charges of driving under revocation and speeding will be dismissed. Is that correct?
By Mr. Fitch: Yes, sir
Q. Okay. Do each of you understand that you don't have to plead guilty to this or any other charge? You can have a trial before a judge; and a judge would have to be convinced that by proof beyond a reasonable doubt that you are in fact guilty of the charges against you.[1]
1 ¿Defendants: Yes, sir.
Q. Is that what you want to do? You want to give up your right to a trial? Defendants: Yes, sir.
Q. Do you understand that in doing so you’re giving up the presumption of innocence that the law affords you and you’re giving up your right to remain silent? You’ll be incriminating yourself if I accept your plea of guilty to this charge. If there were a trial you would not ... you could not be compelled to give testimony against yourself. Rather all you would have to do would be simply appear and have a seat at the counsel table there for the trial. If you wanted to testify at trial you would have a perfect right to do so, but you would be subject to being cross-examined by the prosecution. Do you understand that by pleading guilty you’re giving up that right to remain silent and your presumption of innocence?
Defendants: Yes, sir.
Q. Do you understand by pleading guilty you’re giving up the right that you have to confront you accusers who would *432 in this case be the arresting officer, perhaps the operator of a breath analysis machine, any eyewitnesses who may have seen you drinking and/or driving, passengers in your vehicles, drivers of other cars if there were an accident involved, all of these people would have to be called by the State to testify if there were a trial. And your attorney would have the right and the obligation to cross-examine them after the prosecution had finished. Do you understand that by pleading guilty you’re giving up the right of confrontation and cross-examination?
Defendants: Yes, sir.
The trial judge then explained additional rights to the defendants. The trial judge also informed each defendant of the sentence that he intended to impose upon each of them. He informed the defendants of the penalties for DWI, first offense and second offense. Furthermore, he provided sentencing information concerning DWI, third offense and fourth offense. The trial judge asked the defendants if they had any questions, and they replied “no.” The defendants then pled guilty. The trial judge discussed the factual basis of each guilty plea with the respective defendant, including Fitch. The trial court found that each defendant’s guilty plea was voluntarily and intelligently entered.
| zLaw
In order for a misdemeanor guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, the trial judge must have informed the defendant that by pleading guilty he waived his privilege against compulsory self-incrimination, his right to trial (and jury trial where it is applicable), and his right to confront his accuser. The trial judge must have also ascertained that the accused understood what the plea connotes and its consequences. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Jones, 404 So.2d 1192 (La.1981); State v. Lott, 29,082 & 29,083 (La.App.2d Cir.1/22/97), 688 So.2d 608, writ denied, 97-0711 (La.9/26/97), 701 So.2d 979. The burden of proof is on the state to prove that the defendant expressly and knowingly waived his Boykin rights when entering his guilty plea to the predicate offenses. The state may rely upon a contemporaneous record of the guilty plea proceedings, i.e, the minute entry or the transcript itself. State v. Lott, supra.
The supreme court recently held that the burden-shifting principles of State v. Shelton, 621 So.2d 769 (La.1993), apply to the recidivist portions of the DWI statute, La. R.S. 14:98. In State v. Carlos, 98-1366 (La.7/7/99), 738 So.2d 556, the court revisited its decision in Shelton, supra, stating:
In Shelton, this Court recognized that Boykin does not require that the entire burden be placed on the prosecution in a recidivism proceeding.... Rather, the presumption of regularity that attaches to prior convictions encouraged us to revisit our previous system of placing the entire burden on the State to prove the validity of prior convictions.... Consequently, we held that when a defendant denies the allegations contained in the bill of information in an habitual offender proceeding, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. Id. If the State meets this initial burden, the defendant must produce affirmative evidence ^showing an infringement of his rights or a procedural irregularity in the taking of the plea. Id. If the defendant carries this burden, then the burden reverts to the State to prove the constitutionality of the plea. Id. The State will meet this burden by producing a “perfect” transcript of the guilty plea colloquy.... Anything less than a “perfect” transcript, such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and de *433 termine whether the defendant’s Boykin rights were prejudiced. In Shelton, we held that the State carried its initial burden under the revised burden-shifting rules by producing a well-executed guilty plea/waiver of rights form and a minute entry which stated, inter alia, that the judge “gave the Defendant his rights.” Id. at 770, 780.[2]
We believe that these burden-shifting principles are logically applicable to the recidivist provisions of the DWI statute. The collateral attack on the prior guilty plea made by Carlos in the motion to quash is closely analogous to the recidivism proceeding at issue in Shelton. In both proceedings, the issue of the constitutionality vel non of prior convictions, which are questions of law for the Court to decide, were squarely placed before the Court in a proceeding separate from the fact questions. In the DWI context, we believe such pre-trial determinations allow for efficient disposal of questions that may impact the integrity of predicate offenses used for sentence enhancement, while giving due respect for final judgments that are owed a presumption of regularity. A Shelton hearing that tests the validity of offenses sought to be used in multiple-offender DWI cases does not, however, remove the burden from the State to prove the existence of the conviction at trial. The State retains the burden at trial to prove the existence of the prior convictions and the defendant’s identity as the prior offender. [Footnotes omitted.]

Discussion

In the instant case, the defendant asserts the transcript of his 1991 guilty plea fails to establish that he expressly waived his Boykin rights at the time of the plea because it does not show his separate responses, only those of all of the defendants together.
The defendant’s assertion that a Boykin advisement to a group prevents the entry of a free, knowing and voluntary guilty plea is without merit. This court has |7upheld predicate offenses where the Boykin advisements were given to a group of defendants. See State v. Burford, 32,099 (La.App.2d Cir.6/16/99), 738 So.2d 1158, and State v. Franks, 31,641 (La.App.2d Cir.2/24/99), 730 So.2d 998.
In State v. Fritcher, 95-0124 (LaApp. 1st Cir. 4/4/96), 672 So.2d 295, defendant Fritcher pled guilty to a third offense of DWI reserving his rights pursuant to Crosby, supra. Fritcher challenged the validity of a 1992 DWI, first offense, guilty plea that was used as a predicate offense. Fritcher’s argument on appeal focused on his waiver of counsel.
In Fritcher, supra, the predicate 1992 guilty plea transcript reflected that the Boykin hearing was conducted en masse. Fritcher was individually questioned by the trial judge concerning his address, educational level and employment. The trial judge then informed the defendants as a group of their right to counsel, their Boy-kin rights and other rights.
The appellate court in Fritcher, supra, held that the transcript established that the predicate offense was valid. The court found that the trial court inquired into the background of Fritcher and advised all defendants of their Boykin rights and that all defendants indicated that they understood their Boykin rights. The appellate court reasoned that the trial court had the opportunity to observe the defendant’s demeanor during the Boykin hearing which would assist it in determining whether Fritcher’s waiver of counsel and guilty plea were free and voluntary. The court also noted that Fritcher did not ask any questions when the trial judge asked if any of the defendant had questions.[3]
*434 |sIn the instant case, the transcript of the 1991 guilty plea did not establish an infringement of the defendant’s rights or a procedural irregularity in the taking of the plea. In the 1991 hearing, the defendant was adequately advised of his Boykin rights and was represented by counsel. The record shows that he and the other defendants understood their Boykin rights. The judge advised all of the defendants as to the penalties associated with driving while intoxicated. The trial judge asked the defendants if they had any questions. The defendant asked no questions. The judge then discussed individually with each person pleading guilty— including the defendant in the instant case — the factual basis for that person’s guilty plea. At the conclusion of this colloquy, the trial court, which observed the demeanor of the persons pleading guilty before him, found that each defendant’s plea was freely, voluntarily, knowingly and intelligently entered.
This assignment of error is meritless. The state carried its initial burden of proving that the defendant’s 1991 guilty plea was knowingly and voluntarily entered. The defendant, to whom the burden of proof shifted, failed to show by affirmative evidence any infringement of his rights or any procedural irregularity.
ERRORS PATENT
We note that the trial court failed to advise the defendant regarding the prescriptive period for filing post-conviction relief pursuant to La.C.Cr.P. art. 930.8. Although this oversight is not grounds for reversal under La.C.Cr.P. art. 921, the required notice is designed to inform the defendant in advance about the statutory limitation. Accordingly, the trial court is hereby directed to send appropriate notice in accordance with the recently amended provisions of La.C.Cr.P. art. 930.8 (Acts 1999, No. 1262) within 30 days of the rendition of this opinion, and then file in the record proof that the defendant received such notice. State v. Morvan, 31,511 (La.App.2d Cir.12/9/98), 725 So.2d 515, writ denied, 99-0186 (La.5/28/99), 743 So.2d 659.
CONCLUSION
The defendant’s motion to quash was correctly denied. Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The defendant was not entitled to a jury trial because he was charged with DWI-second offense. See La. Cr.C.P. art. 779 and La. R.S. 14:98. The four other defendants were also not entitled to a jury trial because each was charged with DWI-first offense.

. In Shelton, supra, a "perfect” transcript was defined as one that "reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin.” Carlos, supra.

. However, see State v. Lastrapes, 99-83 (La. App. 3d Cir.6/30/99), 743 So.2d 224. In this *434 direct appeal of his sentences following a guilty plea, defendant Lastrapes’ conviction was reversed after the appellate court noted several errors patent, including a fatally defective failure to inform him of his right of confrontation. That court also faulted the Boykinization because several individuals were advised of their right to juiy trial and right against self-incrimination as a group and the group responded "Yes, sir,” after the advisement. However, the Third Circuit offered no explanation or discussion as to why it found the group advisement and responses were inadequate.