JOAN BERNARD ARMSTRONG, Chief Judge.
 

 |
 
 STATEMENT OF THE CASE
 

 On November 28, 2006, the State filed a bill of information charging the defendant, Juan G. Sandoval, with second degree battery, a violation of La. R.S. 14:34.1. The defendant failed to appear at arraignment, and an alais capias was issued. On October 25, 2007, the defendant appeared for arraignment and pled not guilty.
 

 Defense motions were heard on February 14, 2008. The trial court denied both the motion to suppress the evidence and the motion to suppress the identification and found probable cause. The case was tried before a jury on May 28, 2008. The defendant was found guilty as charged.
 

 The State filed a multiple bill of information alleging that the defendant was a second felony offender having previously been convicted of attempted second degree burglary in the State of California. The defendant filed a motion to quash the multiple bill prior to the hearing. The multiple bill hearing was conducted on July 10, 2008. At the hearing, the State introduced a certified copy of a minute entry from the Superior Court of Santa Clara County, California which reflected that on October 3, 1997, in case number 197395, Juan Gabriel Sandoval pled guilty |2to attempted second degree burglary in violation of California Penal Code §§ 664, 459, 460 subd. (b).
 

 The minute entry reflects that the defendant was represented by counsel and pled guilty after waiving his constitutional rights. The State also introduced a certified copy of a fingerprint form from the Superior Court of Santa Clara County, which was also identified with case number 197395.
 

 At the hearing, the State called Officer Joseph Pollard of the New Orleans Police Department. It was stipulated that he was an expert in fingerprint examination. Pollard informed the court that earlier that day he had fingerprinted the defendant, that he had compared the defendant’s right thumb print with the right thumbprint from the California fingerprint form, and that he found them to be a match with over nineteen points of comparison. Cross examination of Officer
 
 *916
 
 Pollard was limited to the quality of the photocopy of the fingerprint form from California. The minute entry and the fingerprint card were entered into evidence without objection. The defendant called no witnesses and presented no evidence.
 

 The trial court found that the defendant was one and the same person who pled guilty to attempted first degree burglary in case number 197-395 in the Superior Court of Santa Clara, California. The Court then sentenced the defendant to ten years at hard labor and imposed a fine in the amount of two thousand dollars.
 

 The trial court found the defendant to be a second felony offender and denied the motion to quash. The trial court sentenced the defendant to ten years at hard labor and imposed a fine of two thousand dollars. This appeal followed.
 

 ¡STATEMENT OF THE FACTS
 

 Dung Le testified that he has been the manager of the Williams Supermarket on Jackson Avenue in New Orleans for four years. Le explained that on July 8, 2006, the defendant entered the store on two occasions. On the first, Le observed as the defendant attempted to make a purchase. After the cashier totaled the sale, Sandoval did not have enough money and became agitated saying that he was overcharged. Le told the cashier it was okay, to let him go. Le explained that when customers are short of cash, he frequently tells them that they can pay him next time.
 

 Later, the defendant came back to the store. At this point, his demeanor and appearance had changed from earlier in the day. Sandoval’s shirt was unbuttoned, and he was sweating heavily. Also, the defendant had a young child perched on his shoulder. As before, the defendant attempted to make a purchase but did not have enough money. He began to curse at the cashier, and Le told him to put some items back. Because of his demeanor, Le told Sandoval that it was time to leave and walked the defendant to the door. When they reached the door, the defendant was cursing in Spanish and English. Le asked the defendant what he said, but he realized that the defendant was on something. Also Le was concerned about how Sandoval was holding the baby. Le knew not to come any closer. Le told the jury that he did not remember anything more about the incident and only remembers waking up in the hospital.
 

 Le reviewed a video tape of the incident for the jury, commenting on both the defendant’s initial purchase and subsequent appearance.
 

 Willie Monroe testified that on the day in question he was in the Williams Supermarket buying some lottery tickets when he was distracted by some noise. |4He observed that the defendant was attempting to make a purchase but did have enough money. He heard the store manager tell him to put something back which resulted in a confrontation in which the manager asked him to leave the store. When the two got to the steps, the customer hit the manager and knocked him down. Then he kicked him several times. One of the cashiers called out, “Someone call the police. He’s going to kill that man.”. The defendant left the store. The manager was unconscious. He was still unconscious when EMS arrived. Monroe did not observe Le raise his hand or become confrontational. Monroe was not able to identify the defendant.
 

 Detective Kristen Krzemienieck related that on the day in question he was notified that a battery had occurred at the Williams Supermarket on St. Charles and Jackson Avenue. When he arrived, he spoke with the responding officers. The victim was being taken to the hospital by EMS, and the responding officers had an
 
 *917
 
 arrested subject in the rear of their police unit. Krzemienieck spoke with the owner of the store and learned that he had video surveillance in the store, which Krzemien-ieck then watched. Krzemienieck could see that the arrested subject matched the person in the video footage. Krzemienieck identified the defendant as the subject arrested that day.
 

 ERRORS PATENT
 

 A review of the record for errors patent reveals none.
 

 ASSIGNMENT OF ERROR
 

 The defendant contends, both through counsel and pro se, that the State submitted insufficient evidence at the multiple bill hearing to establish that he was | sa habitual offender on the basis of his California conviction. The Louisiana Supreme Court explained the State’s burden in a multiple bill hearing in
 
 State v. Shelton,
 
 621 So.2d 769, 779-780 (La.1993), as follows:
 

 If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between the judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than the “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge must then weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant’s prior guilty plea was informed and voluntary, and made with an articulate waiver of the three
 
 Boykin
 
 rights. (Footnotes omitted).
 

 Shelton
 
 was incorporated into La. R.S. 15:529.1(D)(l)(b) which states:
 

 The district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information.The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response.
 

 The defendant contends that the evidence presented failed to adequately demonstrate the constitutionality of the defendant’s previous guilty plea. Specifically the defendant suggests that although the document provides that defendant was advised of his rights, there is no indication or summary of what rights the defendant agreed to waive by pleading guilty or whether he understood what was occurring when he pled guilty.
 

 |fiThe minute entry from the defendant’s plea clearly reflects that he was represented by counsel and that he waived his constitutional rights. The defendant did not present any evidence of a procedural irregularity or an infringement of his rights. Accordingly, the State met its burden of establishing a valid prior conviction. The defendant’s argument lacks merit.
 

 The defendant also suggests that the State failed to establish that the conduct
 
 *918
 
 which led to his California conviction would constitute a felony in Louisiana. In order for a conviction from another state to serve as a predicate felony for enhancement purposes, the conviction must be for a “crime which, if committed in this state would be a felony....” La. R.S. 15:529.1(A)(1). If the offense from the other state for which the defendant was convicted does not necessarily include conduct considered to be a felony under Louisiana law, that conviction cannot be used to enhance a subsequent felony under the habitual offender statute. The habitual offender statute requires Louisiana courts to determine the analogous Louisiana crime according to the nature of the act involved in the crime of the other state or jurisdiction, not the penalty provided for the offense in the other state or jurisdiction.
 
 State v. Carouthers,
 
 618 So.2d 880 (La.1993).
 

 Initially, the defendant notes that in California the definition of an “attempt” does not provide that mere preparation to commit a crime is insufficient to constitute an offense, while in Louisiana, mere preparation is statutorily excluded from the definition of an attempt by La. R.S. 14:27.
 
 [1]
 
 Accordingly, the defendant |7argues that he may have been convicted of a crime in California involving only his mere preparation to commit a crime for which he could not have been punished in Louisiana. Although California Penal Code § 664 is silent on the issue of mere preparation, California jurisprudence clearly establishes that mere preparation is insufficient to constitute an attempt.
 
 See People v. Crabtree
 
 (2009) 169 Cal.App.4th 1293, 1322, 88 Cal.Rptr.3d 41, (“[Mjere preparation such as planning or mere intention to commit a crime is insufficient to constitute an attempt.”);
 
 People v. Prince
 
 (2007) 40 Cal.4th 1179, 1275, 57 Cal.Rptr.3d 543, 156 P.3d 1015, (attempted burglary requires activities which go beyond mere preparation.).
 
 [2]
 

 The defendant also contends that absent a factual basis one cannot determine whether his actions would have constituted the crime of simple burglary as defined by La. R.S. 14:62. In California, burglary is defined in § 459 of the California Penal Code as follows:
 

 Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code, when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, “in
 
 *919
 
 habited” means currently being used for dwelling purposes, whether occupied or not. A house, trailer, vessel designed for habitation, or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises.
 

 |8The degrees of burglary are delineated in § 460 as follows:
 

 (a) Every burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, or trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building, is burglary of the first degree.
 

 (b) All other kinds of burglary are of the second degree.
 

 La. R.S. 14:62 provides in part:
 

 A. Simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein,
 

 Although the structure element of simple burglary is defined in Louisiana by a more general reference to structures of different types while in California burglary is defined by a more lengthy reference to specific types of structures, a review of § 459 and the statutes included by reference reflects that a violation of § 459 would constitute a simple burglary in Louisiana in violation of La. R.S. 14:62. The defendant notes certain differences in the California statute such as the inclusion of structures “designed for habitation” which is not included in the Louisiana statute, and the distinction regarding doors of a vehicle being locked; however, these differences are cosmetic only and do create circumstances wherein conduct of the California statute would not constitute the crime of simple burglary in Louisiana.
 
 [3]
 

 |9In sum, the State complied with the requirements of La. R.S. 15:529.1, and the trial court properly determined that the defendant was a second felony offender.
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . La. R.S. 14:27(B), provides:
 

 B. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
 

 [2]
 

 . California Penal Code § 664 states in part:
 

 Every person who attempts to commit any crime, but fails, or is prevented or intercepted in its perpetration, shall be punished where no provision is made by law for the punishment of those attempts, as follows:
 

 [3]
 

 . Through counsel, the defendant also argues that it is impossible to determine whether the defendant’s conduct would be punishable "at hard labor” in Louisiana. The argument operates from the incorrect assumption that only crimes that are punishable "at hard labor” are felonies in Louisiana. La. R.S. 14:2(4) provides that a " 'Felony' is any crime for which an offender may be sentenced to death or imprisonment at hard labor.” Accordingly, simple burglary is certainly a felony as it is punishable "with or without hard labor.” Therefore, the defendant’s arguments in this regard are without merit.