11 KIRBY, Judge.
STATEMENT OF THE CASE
On April 22, 1998, defendant was charged by bill of information with distribution of cocaine, a violation of La. R.S. 40:967. Following trial on May 12, 1998, a jury found him guilty as charged. The trial court sentenced him on May 26, 1998 under the provisions of La. R.S. 15:529.1 as a second offender to serve fifteen years at hard labor, the first five years to be served without the benefit of parole, probation, or suspension of sentence. The defense filed a motion to reconsider the sentence and a motion for appeal. The trial court denied the motion to reconsider the sentence and granted the appeal.
FACTS
Sgt. Eddie Selby, the supervisor of the task force unit, testified that on April 2, 1998, the New Orleans Fifth District Task Force was on proactive narcotics patrol. Before beginning the patrol, he made a Xerox copy of the money that was to be used. A spotter car was used to detect anything that might happen from the time the purchase was made and the officer drove out of the area until the time the suspect was arrested.
| ?Selby participated in defendant’s arrest. He identified the defendant as the individual who sold the cocaine. Selby also had a Polaroid picture of the defendant, so the undercover officer could positively identify him. The Polaroid of the defendant was positively identified by the undercover police officer as depicting the individual who sold him the crack. Selby was present when Officer Boden recovered the marked money from defendant.
Officer Tommy Mercadel participated in the buy/bust operation that led to defendant’s arrest. Mercadel identified the defendant as the man from whom he purchased the crack.
Mercadel was cruising in the 1300 block of Frenchman Street in an unmarked car equipped with audio and video recording devices when he saw a subject was sitting on a step. As Mercadel drove by, defendant raised his left hand and nodded his head after they made eye contact. Based on previous experience with street level narcotics, Mercadel took that as an indication that defendant was selling some type of narcotics. Mercadel backed into a space directly in front of the location. The defendant came down the steps, picked up a bicycle, and moved it towards the rear of the truck. A second later, he walked to the driver’s side of Mercadel’s vehicle. Mercadel indicated that he wanted a “twenty.” Defendant spit one wrapped piece of a compressed substance that appeared to be cocaine from his mouth and gave it to Mercadel. Mercadel handed him a marked $20 bill. The entire transaction was recorded on the audio and video equipment, and the tape was played for the jury.
As he drove off, Mercadel provided a detailed physical description of the defendant, his clothing, and a location where he was last seen to the backup vehicle that was equipped with a transmitter. The officers in the backup vehicle heard the ^description and then broadcast the same description over the normal police radio to the support units. Once the take-down *188 unit arrived, they photographed the defendant and showed the picture to Mercadel to make sure they had the right subject. There was no doubt in Mercadel’s mind that defendant was the same person who sold him the crack.
Officer Matthew Boden was part of the take-down unit. He identified defendant as the man he arrested.
Once the defendant was arrested, Boden found the $20 bill in his pocket. He compared it with the Xeroxed copy, and it was a match. Defendant had an additional $27.00 on him.
The State and the defense stipulated that Karen Lewis Holmes, an expert in the testing and identification of narcotics from the Crime Lab, would testify that the substance defendant sold to Mercadel tested positive for cocaine.

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR

For his sole assignment of error, appellant argues that his trial was prejudiced by the State’s invitation to the jury to speculate on whether he may have possessed a large quantity of drugs.
During closing arguments, the prosecutor stated:
Then he’s going to go and say, I had a case with videotape. Why doesn’t the jury come back with simple possession? A videotape with him selling to a cop. The cop has medals all over his chest, very accomplished, |4who went out and did his job. We send that cop a message: Stop doing your job.
Ladies and Gentlemen, you promised and you swore to make a true deliverance [sic] of these facts and evidence. We don’t know what was in that house. There could have been 20 kilos in that house. You didn’t hear about a search warrant where they went in and searched.
Defense counsel objected, and the trial court sustained the objection noting that it was improper argument.
Appellant contends that the State’s argument was clearly outside the scope of La.C.Cr.P. art. 774 which provides that “the argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. ... The state’s rebuttal shall be confined to answering the argument of the defendant.”
Appellant further contends that although the evidence of appellant’s guilt was overwhelming, the error was not harmless because of the likely impact that the prosecutor’s comment had on dissuading the jury from returning a responsive verdict. Appellant argues that the State effectively denied his right to have the jury characterize his conduct as a lesser crime when it suggested to the jury that he may have possessed a larger quantity of crack than that which the evidence proved.
In closing argument, the defense conceded that appellant was in possession of crack and suggested that the jury should a return a responsive verdict of simple possession rather than finding him guilty of distribution of cocaine in light of the very small quantity of drugs involved and the very substantial punishment for distribution. He argued that the defendant was not in the business of selling cocaine, but was just doing a favor for a brother who was trying to buy crack. The State countered that argument by indicating that they did not know what business | .^defendant was in because his home had not been searched, and consequently, they did not know what it might contain.
The State’s comments were clearly a response to defense counsel’s closing argument. The prosecutor was merely pointing out that the argument that defendant was not in the business of selling crack was speculative. In rebuttal closing argument, the State has the right to answer the arguments of defendant. La.C.Cr.P. *189 art. 774. State v. Stovall, 439 So.2d 618 (La.App. 1st Cir.1983).
But even if these statements were not permissible, it is not necessarily reversible error for the prosecutor to have made them. Before an appellate court is permitted to reverse a conviction on the basis of improper argument, it must be convinced that the jury was influenced by the remarks to the extent that the statements contributed to the verdict. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, cert. den. 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996).
The evidence presented at trial demonstrated that appellant sold crack cocaine to an undercover police officer. The entire exchange was captured on videotape, and the jury was able to see and hear the transaction during the course of the trial. Further, when defendant was arrested moments later, he was still in possession of the marked money used by the undercover officer, and his identity as the seller was confirmed. Finally, the rock-like substance purchased from appellant was properly identified by the witnesses and was stipulated to be crack cocaine.
In view of the overwhelming evidence that defendant distributed crack cocaine, it cannot be said that the jury’s verdict was the result of the argument made by the prosecutor, but rather a result of the compelling evidence of appellant’s guilt.
16In accordance with the reasoning above, defendant’s conviction and sentence are hereby affirmed.
AFFIRMED.